Filed 4/28/14  In re K.M. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re K.M. et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E058604 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ1100622) |
| v. | OPINION |
| S.M. et al. | |
| Defendants and Appellants. | |

APPEAL from the Superior Court of Riverside County.  Jacqueline C. Jackson, Judge.  Affirmed.

Lori A. Fields, under appointment by the Court of Appeal, for Defendant and Appellant S.M.

Linda Rehm, under appointment by the Court of Appeal, for Defendant and Appellant K.M.

1

Pamela J. Walls, County Counsel, Raymond M. Mistica, Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

This is an appeal by S.M. (mother) and K.M. (father) from the trial court's orders under Welfare and Institutions Code[1] section 366.26 regarding their three children, Ki., Ke., and Ka. Father and mother both challenge the trial court's July 10, 2013, order terminating their parental rights and selecting adoption as the permanent plan for Ka. Mother also challenges the trial court's March 12, 2013, order authorizing reasonable visitation with Ke. as directed by the child's legal guardian. Finally, the parents challenge the trial court's summary denial of their section 388 petition in which they asked the court to remove Ki.'s social worker and psychotherapist.

For reasons we now explain, we conclude the claims of mother and father are meritless, and we will affirm the challenged orders.

## FACTUAL AND PROCEDURAL BACKGROUND

The pertinent facts are undisputed. Therefore, we take our statement of the pertinent details from the parties' respective briefs.

---

[1] All further statutory references are to the Welfare and Institutions Code unless indicated otherwise.

Los Angeles County Department of Children and Family Services (DCFS) initiated this dependency in October 2009 after receiving a referral that then six-year-old Ki. and four-year-old Ke. were at risk for physical abuse by father. DCFS filed section 300 petitions with respect to both boys alleging father abused the children by striking them, and by grabbing Ki. around the neck and threatening the child by saying he would never see his family again if he told anyone about the abuse. As to mother, the petition alleged she failed to protect her children from abuse by father. The trial court placed the children with mother. In September 2010, after father completed reunification services that included alcohol treatment, anger management, and parenting classes, the trial court allowed him to move back into the home with mother and the children.

In March 2011, DCFS received another referral of physical abuse after Ke. reported father had spanked him with a stick and, as a result, the child was in so much pain he could not sit down. The reporter stated the child's buttocks were severely bruised and marked. Based on the referral, DCFS filed a section 387 petition, later superseded by an amended petition filed in April, alleging father and mother both had physically abused the children by hitting them with belts, causing marks and bruises. The petition further alleged father hit the children with a board, tied their hands and feet, and pinched them. This time the court removed the children from the parents' custody, ordered reunification services and monitored visits. Because mother and father were living in Riverside County, the case was transferred to that county in May 2011.

Riverside County Department of Public Social Services (DPSS) placed Ke. with a foster family in Moreno Valley. Although Ki. initially had been placed with a foster family in Los Angeles, in June 2011, DPSS placed him in the same foster home with Ke. DPSS referred Ke. to the county department of mental health after he was suspended from school for five days apparently because he had pushed a student, and then banged on the classroom window. When he was sent to the principal's office, Ke. refused to go inside, and then flipped over a chair in the school office.

A psychologist diagnosed Ke. with ADHD combined with oppositional disorder, and prescribed psychotropic drugs.

By October 2011, DPSS recommended the boys be returned to the care of mother and father with family maintenance services. At the pertinent review hearing, the trial court followed that recommendation.

On March 6, 2012, DPSS received an immediate response referral through the child abuse hotline after Ke. ran away from the family's apartment to the leasing office of the apartment complex and reported he was afraid to go home because he gets "woopings" from mother and father, but mostly father. The child had a number of small bruises on the inside of his left leg that he said were caused by mother hitting him with a belt. Ke. also had a large bruise on his buttocks and said father hit him with a wooden stick or paddle. Ki. reported he had also been abused by father—father would grab Ki. by the neck and tell him to pay attention. Ki. had a bruise on his neck and reported having other bruises on his upper thigh.

4

DPSS filed a supplemental petition on March 8, 2012, later superseded by an amended petition, with respect to both Ke. and Ki. Among other things, DPSS alleged mother and father physically abused both children causing injury to each of them. The petition further alleged Ke. refused to go home to his parents. According to the social worker's detention hearing report, Ke. said his mother "whooped" him because he misbehaved at school. Mother admitted she "whooped" the child with a belt. The social worker noted the parents had both been advised many times not to use physical discipline on the children. The social worker also reported the parents did not agree that Ke. had ADHD and did not believe in psychotropic medication. They apparently had taken Ke. off his medication and, as a result, Ke. engaged in very disruptive behavior at school.

Dr. Vivanco examined both children on March 8, 2012, at Riverside County Regional Medical Center. The doctor reported Ki. and Ke. had suffered severe physical abuse. Both Ki. and Ke. had scars on their necks the doctor believed had been caused by fingernails and which were consistent with strangulation. They both had other patterned scars on the neck, chest, back, arms, thighs, and legs. Those scars were consistent with having been inflicted by a belt. According to Dr. Vivanco, both Ki. and Ke. described severe and repetitively inflicted trauma. At the detention hearing on March 9, 2012, the trial court ordered the children detained and removed them from the physical custody of both parents.

After Ki.'s caretaker reported the child broke out in hives when he was told he was going to visit with his parents, DPSS referred the child to Dr. Klebel. Another time, Ki. urinated on himself just as he was about to leave for a visit with his parents. Ki. told the social worker he was "scared" of father; he was afraid father would "whoop" him with a belt or choke him out by putting his hands around Ki.'s neck.

Dr. Klebel diagnosed Ki. with Posttraumatic Stress Disorder (PTSD), as evidenced by the child's report that he has daily memories of abuse, and nightmares several times each week. Dr. Klebel also attributed Ki.'s bedwetting to PTSD. In the doctor's opinion, the fact Ki. breaks out in hives before a visit with his father is "a sure sign" the child is "very much emotionally and physically afraid of his father." Dr. Klebel recommended Ki. be allowed to decide whether he wanted to visit with father, but if the child breaks out in hives, he should not see father even if Ki. says otherwise.

Ki. also reported he did not want to see his younger brother, Ke., because Ke. had been touching Ki.'s "private areas" while Ki. was sleeping.

Dr. Klebel reported in a May 2012 progress report for Ke. that the child had drawn a picture of himself tied to a chair, and then lying face down on a bed, being beaten with a belt. Ke. drew many scars on his body. Dr. Klebel reported both Ki. and Ke. had said father told them "what happens in the family stays in the family." Dr. Klebel was particularly bothered by the fact that Ke. apparently had been sexually abusing his older brother, Ki., for many years, including during the times the children lived with their parents. Dr. Kozman evaluated Ke. and diagnosed PTSD, ADHD, conduct disorder, and

6

depression. The doctor prescribed Clonidine and Vyvanse for the child, which his caregiver reported resulted in a big improvement in Ke.'s behavior.

On July 18, 2012, the trial court found the allegations of the amended section 387 petition to be true as to both Ki. and Ke. Among other things, the court denied reunification services to mother and father because they had made minimal progress on their respective case plans and the time for services had expired. The trial court set the section 366.26 selection and implementation hearing for November 15, 2012.

In August 2012, mother gave birth to Ka. DPSS filed a petition on the infant's behalf alleging jurisdiction under section 300, subdivisions (b) and (j), because mother and father had engaged in multiple acts of physical abuse of Ki. and Ke., they had received services since 2009 but had not benefited from those services, they had failed to reunify with Ke. and Ki. and, as a result, Ka. was at risk of similar physical abuse. At the detention hearing, the trial court detained Ka., and placed the infant in the same foster home with Ki.

By the time of the jurisdiction hearing on November 13, 2012, DPSS had placed Ka. with the child's paternal great aunt and uncle, and the infant had been living in their home for nearly two months. The trial court removed Ka. from her parents' custody, and denied them reunification services.

At a review hearing on November 28, 2012, the court ordered Ki. and Ke. maintained in their respective placements, with the goal of legal guardianship as the permanent plan. The social worker reported Ki. had been severely traumatized by his parents and, even though he did not have contact with father, his visits with mother or

7

other relatives would cause him to remember the terror he experienced in his parents' home. Ki. would regress to the age of a four-year-old child, break out in hives, and wet the bed.

After several continuances, and changes in the recommended permanent plans, the trial court conducted the selection and implementation hearing for Ke. on March 12, 2013, and ordered legal guardianship with his current caretaker as the permanent plan. On July 10, 2013, the court conducted the selection and implementation hearings for both Ki. and Ka. With respect to Ki., the court ordered legal guardianship as the permanent plan. After finding Ka. was likely to be adopted, the court terminated the parental rights of mother and father, and ordered adoption as the permanent plan.

## DISCUSSION

## 1.

## BENEFICIAL RELATIONSHIP EXCEPTION TO PARENTAL RIGHTS TERMINATION

Mother and father both contend the beneficial relationship exception to termination of parental rights set out in section 366.26, subdivision (c)(1)(B)(i), is applicable with regard to Ka. Therefore, they contend the court erred in terminating their parental rights. We disagree.

Section 366.26, subdivision (c)(1), provides if clear and convincing evidence establishes it is likely the child will be adopted, the court shall terminate parental rights and order the child placed for adoption. Section 366.26, subdivision (c)(1)(B)(i), creates an exception to termination of parental rights if "[t]he court finds a compelling reason for

8

determining that termination would be detrimental to the child" because "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." The court in this case found the exception did not apply. Mother and father contend the court erred.

It is well-settled, to prevail in establishing the beneficial relationship exception, the parent must demonstrate both that he or she has maintained regular visitation and contact with the child and that a continued parent-child relationship would "promote[] the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. . . . If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575; see *In re S.B.* (2008) 164 Cal.App.4th 289, 297.) "The factors to be considered when looking for whether a relationship is important and beneficial are: (1) the age of the child, (2) the portion of the child's life spent in the parent's custody, (3) the positive or negative effect of interaction between the parent and child, and (4) the child's particular needs." (*In re Angel B.* (2002) 97 Cal.App.4th 454, 467.) "[T]he parent must show more than frequent and loving contact, an emotional bond with the child, or pleasant visits. . . . [T]he parent must prove he or she occupies a parental role in the child's life . . . . [Citations.]" (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 229.) The parent must also show more than a relationship which may be beneficial to the child

9

to some degree but does not meet the child's need for a parent.  (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1348.)

The burden of proof is on the party seeking to establish one of the exceptions to the adoption preference.  (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1527.)  Accordingly, unless the evidence compels a finding in favor of the parent, the challenge to the court's finding that the exception does not apply must fail.  (*In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314.)

In this case, neither mother nor father testified at the selection and implementation hearing.  Moreover, neither of them asserted the beneficial relationship exception at that hearing.  Therefore, the facts set out in the social worker's reports are the only evidence pertinent to their claim.  Those facts show, as the court observed, both parents had "consistent visitations with [Ka.]"

In addition, father cites this court to the social worker's observation that both he and mother were "appropriate, bonded, attentive, and caring during their interaction with Ka."  He argues this evidence establishes a beneficial relationship with Ka.  Mother also points out the court permitted her to breast-feed Ka. or provide breast milk to the infant's caretakers.  Mother and father have not cited any other facts relevant to establishing the previously noted *Angel B.* factors.

The social worker's observation, combined with the court's finding, establish mother and father maintained consistent visits with Ka. during which they were loving, caring, and behaved appropriately.[2]

Ka. was 11 months old at the time of the selection and implementation hearing in July 2013. Ka. was only two weeks old when the court removed her from the custody of her parents and placed her in the home of her caretakers. Although it is undisputed the parents maintained consistent visits with the baby during which they behaved appropriately, they simply have failed to meet their burden to demonstrate they occupied a parental role in Ka.'s life such that termination of that relationship would be detrimental to Ka.

## 2.

## VISITATION ORDER

Mother contends the court abused its discretion at the March 12, 2013, selection and implementation hearing for Ke. by ordering "reasonable" visitation "as directed by the legal guardian." According to mother, the order improperly delegates discretion over

---

[2] Father claims the court might have based the decision to terminate his parental rights on the fact that Ka.'s adoptive caretakers, who are family members, could continue to allow the parents to visit. Father bases this claim on the court's observation that Ka. "is with family and the parents make consistent visitations with her," and subsequent statement, "[t]he Court will indicate that the caregivers continue to have the authority to allow parental visitation." Neither comment supports the inference father would have us draw. The first is merely a statement of fact; the second is directed at visitation during the interim between the section 366.26 hearing and such time as a petition for adoption is granted.

every aspect of visitation to the legal guardian. Mother did not raise this objection in the trial court and, therefore, has not preserved the issue for review on appeal.[3]

The general rule is that a parent's failure to raise an issue in the trial court forfeits the issue for appellate review. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, superseded by statute on other grounds as stated in *In re M.R.* (2005) 132 Cal.App.4th 269 [Fourth Dist., Div. Two].) Although we have the authority to overlook a party's failure to raise an objection in the trial court, the California Supreme Court has explained, "[T]he appellate court's discretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue. [Citations.] Although an appellate court's discretion to consider forfeited claims extends to dependency cases [citations], the discretion must be exercised with special care in such matters. 'Dependency proceedings in the juvenile court are special proceedings with their own set of rules, governed, in general, by the Welfare and Institutions Code.' [Citation.] Because these proceedings involve the well-being of children, considerations such as permanency and stability are of paramount importance. [Citation.]" (*In re S.B.*, at p. 1293.)

---

[3] DPSS contends mother's appeal is untimely because she did not file her appeal until August 2013. Mother filed a timely appeal from the March 12, 2013, order selecting legal guardianship as the permanent plan for Ke. In August 2013, she filed an appeal from the court's orders issued at the July 10, 2013, selection and implementation hearing for Ki. and Ka.

12

There is no important legal issue to be resolved in this case. Mother did not object at the selection and implementation hearing when the court issued the visitation order. Therefore, she has forfeited her right to challenge that order on appeal. The purpose of the rule requiring an objection in the trial court "is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected." (*In re S.B.*, *supra*, 32 Cal.4th at p. 1293.)

## 3.

## DENIAL OF SECTION 388 PETITION

At the section 366.26 hearing on July 10, 2013, the court ordered monthly visits between Ki. and mother, and visits with father in a therapy setting to begin the end of July 2013. On August 7, 2013, DPSS filed a petition to modify that order. DPSS alleged after a visit with father on July 10, 2013, Ki. had "episodes of encopresis, . . . nightmares, night terrors, flashbacks to abuse and witness to same. In order to gain the most benefit from therapy, [Ki.] requires no visitation with the patents [*sic*] as he walks towards [*sic*] a favorable recovery." To support the allegations in the petition, DPSS appended a letter dated July 30, 2013, from Ki.'s psychotherapist, Edmund Kasner, in which he recommended Ki. not have any contact with his biological parents in order to facilitate and promote the child's recovery from his serious emotional, mental, and behavioral deficits. The court set a hearing on the petition for September 12, 2013.

13

On August 12, 2013, mother and father jointly filed a petition to change Ki.'s psychotherapist, social worker, and "legal guardianship." Both parents alleged the social worker and psychotherapist were biased against them. On that basis, they asked the trial court to issue an order directing Ki. be treated by a therapist not affiliated with DPSS, and for DPSS to assign Ki. a different social worker. The trial court summarily denied the petition, finding the requested change did not promote the best interests of the child. Mother contends the trial court abused its discretion.[4]

We begin our discussion with the general principle, "A party may petition the court under section 388 to change, modify or set aside a previous court order. The petitioning party has the burden of showing, by a preponderance of the evidence, that (1) there is a change of circumstances or new evidence, and (2) the proposed change is in the child's best interests. [Citations.] The petition must be liberally construed in favor of its sufficiency. [Citations.] 'The parent need only make a prima facie showing to trigger the right to proceed by way of a full hearing.' [Citation.] '"[I]f the petition presents any evidence that a hearing would promote the best interests of the child, the court will order the hearing." [Citation.]' [Citation.] 'However, if the liberally construed allegations of the petition do not make a prima facie showing of changed circumstances and that the proposed change would promote the best interests of the child, the court need not order a hearing on the petition. [Citations.] The prima facie requirement is not met unless the

_____

[4] Although father joined in the section 388 petition and also joins in mother's brief to the extent "it inures to [his] benefit," we nevertheless refer only to mother in addressing this issue.

14

facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition.' [Citation.] In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case. [Citation.]" (*In re Jackson W.* (2010) 184 Cal.App.4th 247, 257-258.)

Assuming without actually deciding (1) that a section 388 petition is the appropriate procedural device for accomplishing the goals mother sought in her petition and (2) that mother's showing was sufficient to establish changed circumstances, her showing failed to establish the second prong, that the requested change was in the best interests of Ki. Her insistence otherwise notwithstanding, mother has failed to demonstrate that either requested change would be in the best interests of Ki.

Mother alleged in the section 388 petition that changing Ki.'s therapist would be in the child's best interests because Ki.'s "mental health status is a top priority for us and we feel that the therapist he is currently seeing is not concern[ed] with that, their only concern is to separate [Ki.] from his family, which he testif[ied] in court he wants to be with."[5] In the lengthy letter submitted by mother and father to support their section 388 petition, they purported to cite facts to support the view that Ki. wanted to be with his family, and fulfilling that desire was in Ki.'s best interests.

---

[5] According to the social worker, Ki. told his caretaker he asked to visit with his father in court at the hearing on July 10, 2013, "because he felt 'safe' since there were other adults in the Court room including a police officer."

Stated bluntly, mother's "belief" that Ki. wanted to continue to visit with her cannot trump the informed expert opinion of the child's psychotherapist regarding whether such visits are currently in Ki.'s best interests. The record is replete with evidence to show Ki. feared his father and that his visits with mother, even though pleasant, triggered negative emotions in the child. Likewise, mother's view that the social worker is biased against her, even if true, does not demonstrate removal of the social worker is in the best interests of Ki. Simply put, and despite mother's lengthy argument to the contrary, mother failed to demonstrate that replacing Ki.'s social worker and/or psychotherapist would be in the best interests of Ki. We must conclude mother failed to make a prima facie showing and, therefore, the trial court did not abuse its discretion by denying mother's section 388 petition.

## DISPOSITION

The order terminating the parental rights of mother and father to Ka. is affirmed.

The order directing reasonable visitation between the parents and Ke. as directed by his legal guardian, is affirmed.

The order denying the parents' section 388 petition is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER

J.

We concur:

RAMIREZ

P. J.

KING

J.

16