Filed 11/4/14  In re Anna S. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re Anna S., a Person Coming Under the Juvenile Court Law. | |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, | C075978 |
| Plaintiff and Respondent, | (Super. Ct. No. JD233656) |
| v. | |
| Elizabeth S., | |
| Defendant and Appellant. | |

Elizabeth S., mother of the minor, appeals from orders of the juvenile court denying her petition for modification and terminating her parental rights.  (Welf. & Inst. Code, §§ 388, 366.26, 395; undesignated statutory references are to the Welfare and Institutions Code.)  Mother contends (1) the court abused its discretion in not granting a hearing on her petition for modification and (2) the court erred in not applying the

1

beneficial parental relationship exception to avoid termination of her parental rights.  We conclude there was no abuse of discretion and no error.  We affirm.

FACTS

One-year-old Anna S. was removed from mother's custody in August 2013 for neglect resulting from mother's polysubstance abuse.  The September 2013 jurisdiction/disposition report recommended the juvenile court bypass services for mother because her parental rights had been terminated as to her three older children.  The report stated the 34-year-old mother's polysubstance abuse began in her early teens.  She had been in several treatment programs since 2000 but did not complete them.  The social worker referred mother to residential and related drug treatment programs.  Mother's visits with the minor were marked by the minor crying and resisting mother, with no evidence of a parent-child bond.

An addendum report in October 2013 stated mother was participating in her residential treatment program and appeared to be doing well.  The quality of the visits had improved and the minor was responding to mother and cried less often.

At the jurisdiction/disposition hearing in November 2013, the counselor from mother's treatment program testified that mother was making good progress and had no positive tests.  The counselor expected mother to graduate from the program soon and recommended intensive outpatient treatment for her.

Mother testified she had been clean since the minor was removed and believed the treatment program would work this time.  She intended to continue treatment even if services were not offered to her.  Mother testified about her visits with the minor and noted the minor did not cry at visits anymore.  She appeared to minimize the severity of her substance abuse problem and testified her longest period of sobriety was 18 months while participating in another treatment and relapse prevention program.

2

The juvenile court sustained the petition, bypassed services, and set a section 366.26 hearing. Citing mother's failure to reunify with her three older children, her chronic substance abuse, her lack of effort to treat the problem after the minor was born, her repeated failures to rehabilitate, and her inability to recognize how her polysubstance abuse harmed the minor, the court found it unlikely mother would be successful in the six months available to her for services. The court further found mother had failed to show by clear and convincing evidence that services were in the minor's best interest, noting the minor's interest was in permanency and the minor had only recently begun to warm up to mother during visits.

In February 2014, three months after the jurisdiction/disposition hearing, mother filed a petition for modification (§ 388) seeking an order for services. She alleged, as changed circumstances, that she had been sober for six months, finished her residential treatment program in January 2014, participated in parenting classes and applied what she learned at visits, obtained her G.E.D, attended 12-step meetings, paid for her own drug testing, tested negative, maintained regular visits with the minor, was living in clean and sober transitional housing and looking for work. Mother further alleged the proposed modification was in the minor's best interests because she had maintained a clean and sober lifestyle, regularly visited the minor and they shared an extremely close bond. Mother alleged the minor recognized her as mother and was affectionate with her. Mother further alleged she had demonstrated her parenting skills in visits and was dedicated to being the best mother for the minor.

On February 27, 2014, the juvenile court denied mother's section 388 petition without a hearing because (1) the petition did not state new evidence or a change of circumstances and (2) the proposed change of order did not promote the best interests of the minor. The court further stated that, at the trial in November 2013, the evidence of

3

mother's participation in services after the minor was removed was before the court and the court had considered mother's current efforts to address her addiction.

The March 2014 report for the section 366.26 hearing stated mother attended her twice-weekly supervised visits regularly and consistently. Mother and the minor appeared to have a good time in visits. Mother brought activities, food, and clothing and the visits were interactive with both participants happy to see each other. However, at one recent visit, mother was more focused on her own need to have the minor in her life than on the minor's needs. Mother also had difficulty with age-appropriate conversations. The minor occasionally whined when leaving the foster mother for a visit and was excited to return to her when the visit ended. The minor was assessed as generally adoptable and the current caretaker was interested in adopting the minor. The report concluded the benefits of permanency outweighed the benefit to the minor of three months of positive interaction in light of mother's long history of substance abuse and no evidence of her stability or long-term sobriety.

At the section 366.26 hearing in April 2014, mother testified she visited regularly after services were denied and tried to teach the minor various things as well as reading to her and playing games. She testified the minor was happy to see her at visits. Mother believed there was a positive bond between her and the minor and the minor saw her as mother. Mother wanted to get into a transitional program where she could have the minor with her. She believed the minor would benefit from continuing contact because the contact they had during visits was characterized by close and positive interactions. Mother acknowledged there were problems during early visits but the minor soon recognized her and the relationship progressed.

In its ruling, the juvenile court stated the minor was removed when she was 15 months old and during most of the time they were together, mother was using various

4

drugs and the minor suffered from neglect. Services were bypassed due to mother's history of drug use and failure to reunify. The court described mother's relationship with the minor as that of a daycare provider, relative, or teacher, not of a parent. While mother's visits were regular, the court could not find the benefit of an insecure placement and contact with mother outweighed the benefit of a secure and stable home. The court concluded mother had not met her burden to show an exception to the preference for adoption, ordered mother's parental rights terminated, and selected adoption as the permanent plan.

DISCUSSION

## I

### *Petition for Modification*

Mother argues the juvenile court abused its discretion in not ordering a hearing on her petition for modification because she had made a prima facie showing of changed circumstances and the proposed order was in the minor's best interests. As changed circumstances, mother alleged she had continued to attend drug treatment programs, stay sober, and visit the minor.

A parent may bring a petition for modification of any order of the juvenile court pursuant to section 388 based on new evidence or a showing of changed circumstances.[1]

---

[1] Section 388 provides, in part: "Any parent . . . may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court . . . for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court." (§ 388, subd. (a)(1).) The court must set a hearing if "it appears that the best interests of the child . . . may be promoted by the proposed change of order . . . ." (§ 388, subd. (d).)

"The parent requesting the change of order has the burden of establishing that the change is justified." (*In re Michael B.* (1992) 8 Cal.App.4th 1698, 1703.)

To establish the right to an evidentiary hearing, the petition must include facts that make a prima facie showing there is a change in circumstances and "the best interests of the child may be promoted by the proposed change in order." (*In re Daijah T.* (2000) 83 Cal.App.4th 666, 672-673; *In re Zachary G.* (1999) 77 Cal.App.4th 799, 806; *In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1414; Cal. Rules of Court, rule 5.570(e)(1).) "In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case." (*In re Jackson W.* (2010) 184 Cal.App.4th 247, 258.) Further, when ruling on a petition to modify, the juvenile court exercises its sound discretion and, absent a showing of a clear abuse, the decision of the juvenile court will be upheld. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319; *In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067.)

Where, as here, the petition is brought when services have been bypassed or terminated and the selection and implementation hearing is pending, the best interests of the child are of paramount consideration. (*In re Stephanie M.*, *supra*, 7 Cal.4th at p. 317.) In such a case, the juvenile court looks not to the parent's interests in reunification but to the needs of the child for permanence and stability. (*Ibid.*; *In re Marilyn H.* (1993) 5 Cal.4th 295, 309.)

Mother was unable to make either of the required showings. She had continued in services on her own and made some progress in addressing her substance abuse issues. However, given her extensive history of polysubstance abuse and her previous relapse after a period of 18 months of sobriety, her claimed sobriety for 8 months was, at best, changing circumstances and not enough to justify a hearing on the petition. (*In re Baby Boy L.* (1994) 24 Cal.App.4th 596, 610.)

6

Additionally, while the minor had been in her care for more than a year before removal, at the time of detention the minor showed no bond to mother. At the time the petition for modification was filed, the bond between them was neither strong nor yet parental. Mother relied on the existence of the purported bond to support a prima facie showing that ordering reunification services would be in the minor's best interest, but here too, circumstances were only changing. The juvenile court did not abuse its discretion in denying mother's petition for modification without a hearing.

## II

### *Beneficial Parental Relationship Exception*

Mother argues the juvenile court erred in failing to find she had established the beneficial parental relationship exception applied to the case and termination of parental rights should not have occurred.

At the selection and implementation hearing held pursuant to section 366.26, a juvenile court must choose one of the several " 'possible alternative permanent plans for a minor child. . . . *The permanent plan preferred by the Legislature is adoption.*' [Citation.] If the court finds the child is adoptable, it *must* terminate parental rights absent circumstances under which it would be detrimental to the child." (*In re Ronell A*. (1996) 44 Cal.App.4th 1352, 1368.) There are only limited circumstances that permit the court to find a "compelling reason for determining that termination [of parental rights] would be detrimental to the child." (§ 366.26, subd. (c)(1)(B).) The party claiming the exception has the burden of establishing the existence of any circumstances that constitute an exception to termination of parental rights. (*In re Cristella C*. (1992) 6 Cal.App.4th 1363, 1373; *In re Melvin A*. (2000) 82 Cal.App.4th 1243, 1252; Cal. Rules of Court, rule 5.725(d)(4); Evid. Code, § 500.)

Termination of parental rights may be detrimental to the minor when: "The parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) However, the benefit to the child must promote "the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. In other words, the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent/child relationship would deprive the child of a substantial positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*In re Autumn H*. (1994) 27 Cal.App.4th 567, 575; *In re C.F.* (2011) 193 Cal.App.4th 549, 555.) Even frequent and loving contact is not sufficient to establish this benefit absent a significant positive emotional attachment between parent and child. (*In re I.R.* (2014) 226 Cal.App.4th 201, 213.)

Mother established there was regular visitation and a positive relationship between herself and the minor. However, the juvenile court found the level of the relationship was similar to that of a daycare provider, relative, or teacher, but did not rise to the level of parent and child. Mindful of the minor's need for permanence and stability, the court balanced the quality of this relationship in an unstable placement against the stability and security of an adoptive placement with a family that already provided the minor with a loving home. The court properly concluded that severing the relationship with mother to provide the minor stability would not greatly harm the minor. Mother failed to meet her burden of establishing a beneficial parental relationship exception to termination of parental rights.

DISPOSITION

The orders of the juvenile court are affirmed.


      HOCH     , J.


We concur:


     MAURO    , Acting P. J.


     MURRAY   , J.