184 Cal.App.4th 247 (2010)
In re JACKSON W. et al., Persons Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, Plaintiff and Respondent,
v.
D.W., Defendant and Appellant.
No. D055622.
Court of Appeals of California, Fourth District, Division One.
April 29, 2010.
*250 Kathleen Murphy Mallinger, under appointment by the Court of Appeal, for Defendant and Appellant.
John J. Sansone, County Counsel, John E. Philips, Chief Deputy County Counsel, and Lisa Maldonado, Deputy County Counsel, for Plaintiff and Respondent.
M. Elizabeth Handy, under appointment by the Court of Appeal, for Minors.

OPINION
McCONNELL, P. J. 
D.W., mother of dependent children Jackson W. and Trenton W. (together, the minors), appeals a juvenile court order summarily denying her Welfare and Institutions Code[1] section 388 petition for modification by which she sought a hearing on whether she received the effective assistance of counsel at an earlier stage of the proceedings. This appeal raises several issues of first impression: (1) whether a parent who waives the right to have the juvenile court appoint counsel trained in juvenile dependency law in order to retain counsel who does not meet those qualifications can claim privately retained counsel provided ineffective representation; and (2) whether a section 388 petition is the proper mechanism by which to raise a claim of ineffective assistance of counsel. We hold a parent, after proper advisement, may knowingly, intelligently and voluntarily waive the statutory right to be represented by appointed counsel meeting the definition of "competent counsel" under California Rules of Court,[2] rule 5.660(d). Once that right is waived, the parent is precluded from complaining about counsel's lack of juvenile dependency qualifications. We further hold that a parent who has a due process right to competent counsel can seek to change a prior court order on the ground of ineffective assistance of counsel by filing a section 388 petition, although the customary and better practice is to file a petition for writ of habeas corpus in the juvenile court.
Even assuming D.W. did not waive her right to raise the issue of her retained counsel's incompetence, and even assuming she properly alleged ineffective assistance of counsel in a section 388 petition, we conclude she has not met her burden of showing she was entitled to an evidentiary hearing on the petition or that she was prejudiced by counsel's claimed deficiencies. Accordingly, we affirm the order.

*251 FACTUAL AND PROCEDURAL BACKGROUND
In June 2008 the minors were removed from the custody of their parents, D.W. and Matthew W. (together, the parents), when two-month-old Trenton was discovered to have multiple injuries, including a fractured femur and several fractured ribs in various stages of healing. Trenton also had an injury to his mouth and a bruise under his eye which the parents could not explain. When D.W. discovered Trenton had a swollen leg, she took him to the emergency room, but then left because it was too crowded, and waited until the next day to call the doctor. The parents' explanation that the femur fracture resulted from a fall from their bed several days earlier was inconsistent with medical findings. When Jackson was a newborn, he was taken to the hospital with bruises on the sides of his face. Matthew claimed this occurred when Jackson's head got stuck between the crib railings.
The attending physician noted Trenton would have been in tremendous pain at the time of the femur fracture, and he would have cried every time he had his diaper changed or was bathed. Matthew said he could have caused the rib fractures by holding Trenton too tightly, and he could have caused the femur fracture by twisting Trenton's leg to turn him face up. The parents did not understand the severity of Trenton's injuries, and D.W. insisted Matthew had not caused the injuries.
The San Diego County Health and Human Services Agency (Agency) filed petitions in the juvenile court alleging Trenton had suffered severe physical abuse inflicted nonaccidentally (§ 300, subd. (e)), and one-year-old Jackson was at substantial risk of harm as a result of the abuse inflicted on Trenton (§ 300, subd. (j)). The court made prima facie findings on the petitions and detained the minors in out-of-home care.
In a report prepared for the jurisdiction and disposition hearings, Agency recommended the court deny the parents reunification services under section 361.5, subdivision (b)(5). Even after Trenton's injuries were called to D.W.'s attention and Matthew admitted causing them, D.W. claimed Trenton had a "bone condition" or the babysitter was responsible for the injuries. However, the medical reports ruled out a bone condition and concluded the injuries were caused by nonaccidental trauma. Based on Trenton's visible injuries, the inconsistent story D.W. gave for them and her delay in obtaining treatment, the social worker believed D.W. was fully aware of the abuse that was occurring, allowed it to happen and chose to protect Matthew rather than her children.
The social worker believed reunification services for D.W. would not be in the minors' best interests because services would not likely prevent reabuse. D.W. had not protected the minors, and she lacked protective skills *252 despite completing a parenting class and actively engaging in therapy. She refused to admit Matthew abused the minors.
In July 2008 the parents appeared in court with their appointed counsel and the matter was set for trial. A month later, D.W. informed the court she wanted to hire her own attorney. The court advised D.W. of the importance of hiring an attorney because of the possibility she would not receive reunification services. County counsel commented that D.W. should be aware that her counsel of choice needed to specialize or be approved in child dependency law, and "she would have to waive that specialty if she's going to retain anybody that does not regularly practice in this field."
D.W. was enrolled in therapy and making some progress. She was now "opening her eyes" to the possibility Matthew had caused Trenton's injuries, but was still "really torn." D.W. acknowledged something had happened to Trenton, but she was not sure how he was injured.
On September 2, 2008, D.W. appeared in court with her retained counsel, Randall Dierlam. The following exchange occurred:
"The Court: All right. Thank you. Is that correct, ma'am, that is as to the mother, you wish Mr. Dierlam to be your attorney?
"The Mother: Yes, sir.
"The Court: Mr. Dierlam, are you a certified specialist in juvenile dependency law?
"Mr. Dierlam: No, I'm not.
"The Court: All right. And your attorney, Mr. Dierlam, has indicated, or the attorney you would like to have represent you has indicated that he is not such a specialist. Do you understand that?
"The Mother: Yes.
"The Court: Is it still your desire to have Mr. Dierlam represent you in this proceeding?
"The Mother: Yes."
The court designated Dierlam as D.W.'s counsel.
D.W. told the social worker she now believed Matthew accidentally injured Trenton by causing him to hit his eye and lip on the crib. D.W. said she no longer lived with Matthew, she had filed for divorce and she was furious with *253 him. However, the social worker's observation of the parents led her to believe they intended to continue their relationship.
A psychological evaluation of D.W. showed she was not protective of her children. She had a tendency to lie, and it was not likely the minors could be safely returned to her custody within the limited timeframe for reunification.
At a contested jurisdiction hearing, social worker Beatriz Luna testified that Matthew had admitted causing Trenton's femur and rib fractures. D.W. saw the bruise under Trenton's eye and his "busted lip," but claimed she did not know Matthew inflicted those injuries. The minors would be unsafe with D.W. because she persisted in her belief that Matthew did not cause Trenton's injuries.
Child abuse specialist Dr. Cynthia Kuelbs testified Trenton had a series of injuries resulting from inflicted trauma. His rib fractures occurred a few weeks before his femur fracture. A two-month-old infant could not have scooted from the center of the bed to the edge, as described by the parents. The femur fracture was likely caused by twisting the child's leg violently and with a great deal of force. The rib fractures would have been caused by compression, not by carrying the child as described by Matthew. Trenton would have been in obvious pain and discomfort from his injuries. Trenton's lip injury was likely caused by forcing an object into his mouth. It was unusual that the parents did not seek medical treatment for their seven-week-old child's bleeding mouth.
The court sustained the allegations of the petitions by clear and convincing evidence. As to D.W., the court found she knew or reasonably should have known Trenton was being physically abused.
Before disposition, the Cherokee Nation of Oklahoma successfully sought to intervene in the case on behalf of the minors, who were Indian children within the meaning of the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.).
At the contested disposition hearing, the court admitted D.W.'s psychological evaluation into evidence. D.W. testified she had no idea how Trenton could have sustained broken ribs. She explained that she placed him on the bed, turned her back and then found him facedown on the floor. Trenton was not crying and did not appear to be hurt. The next day, D.W. did not notice any swelling or bruising as a result of Trenton's fall. Trenton previously had a tiny bruise on his cheek and a bruised lip, and D.W. believed these injuries were adequately explained by Matthew having bumped Trenton's head on the crib. After two days, the facial bruise disappeared and Trenton's lip appeared to be fine.
*254 D.W. further testified that on the day Trenton sustained the femur fracture, he did not appear to be in distress or have any injuries. The next day, D.W. picked up Trenton from the babysitter's house and noticed his leg was swollen. She took him to the hospital, but left because the emergency room was too busy. She waited until the following day to call for a doctor's appointment. When tests showed Trenton had a fractured femur, D.W. explained he had fallen from the bed. She had seen Trenton scoot himself around. D.W. did not suspect Matthew had injured Trenton, and she believed Matthew's claim that he had never handled Trenton in a way that could have caused the fracture. D.W. believed Trenton was injured while in the care of the babysitter. Even after Matthew said he caused Trenton's injuries, D.W. remained confused.
When asked about her plan to protect the minors, D.W. testified she would move out of state and stay away from Matthew. She had already filed for divorce. D.W. continued to participate in therapy and completed a parenting course. She spent the night with Matthew a few times after the minors were removed from her custody, including one time recently.
Social worker Luna testified she considered D.W. to be nonprotective of the minors because she had not believed Matthew caused Trenton's injuries.[3] Luna was also concerned that D.W. was lying, living with Matthew and lacked a significant bond with the minors. Based on these factors, Luna recommended the court deny D.W. reunification services.
The court received into evidence the declaration of Indian expert witness Nicole Allison, a child welfare specialist for the Cherokee Nation. Allison testified that in her opinion, the minors would suffer serious emotional damage if placed with D.W.
After considering the evidence and hearing argument of counsel, the court declared the minors dependents, removed them from parental custody and placed them in foster care. The court denied D.W. reunification services under section 361.5, subdivision (b)(5) and (6) as to Trenton, and under section 361.5, subdivision (b)(6) and (7) as to Jackson, and set a section 366.26 selection and implementation hearing. The court advised the parents of their right to challenge its findings and orders by filing a notice of intent and writ petition, and also instructed the parents' counsel to provide the appropriate forms and to further advise the parents of their appellate remedies.
D.W.'s counsel filed a notice of intent to file a writ petition, signed by D.W., on February 10, 2009. The next day, D.W. and her counsel signed *255 and filed a substitution of attorney, substituting D.W. as counsel for herself. When a writ petition was not timely filed, this court dismissed the matter, deeming the notice of intent to be abandoned.
In May 2009 Agency filed a report for the section 366.26 selection and implementation hearing, recommending a permanent plan of adoption for the minors. Agency recommended the minors be adopted by the paternal grandfather, and planned to move the minors to his home in Colorado. The parents had been living together until Matthew was recently arrested for child abuse. D.W. continued to support Matthew, and cancelled a visit with the minors so that she could attend his criminal hearing.
At a hearing on June 1, 2009, the court relieved Dierlam as D.W.'s attorney,[4] and appointed counsel for her. D.W. told the court she had "fired" Dierlam because he was not "child dependency qualified," and this was not helping her case. D.W. admitted that when she retained Dierlam, the court had advised her of her right to a certified juvenile dependency lawyer, but she nevertheless wanted to proceed with Dierlam. The court set a contested selection and implementation hearing for August 20, 2009.
On June 25, 2009, D.W. filed a section 388 petition seeking to have the court vacate its jurisdictional and dispositional findings and orders on the ground of ineffective assistance of counsel by Dierlam. As to changed circumstances, the petition alleged numerous instances of counsel's failure to properly represent D.W. As to best interests, the petition alleged returning the minors to D.W.'s custody and/or providing her with services would "further foster" the bond D.W. shared with them. The court summarily denied the petition, finding it did not state new evidence or changed circumstances. The court also found the issues raised were not "viable" for a section 388 petition because they related "to any appeal that may be filed for ineffective assistance of counsel," and, in any event, there was no showing the outcome would have been different.

DISCUSSION
D.W. contends the court erred by denying her section 388 petition without an evidentiary hearing. She asserts (1) a section 388 petition is the proper procedure for raising the issue of ineffective assistance of counsel as a way of challenging the court's denial of reunification services; (2) her section 388 petition made a prima facie showing of changed circumstances and best interests, entitling her to a full evidentiary hearing on the issue of ineffective *256 assistance of counsel; and (3) whether the lack of competent counsel affected the outcome of the proceedings must be decided at a hearing on the merits.

I

WAIVER
Before reaching the merits of D.W.'s contentions, we address Agency's assertion D.W. has waived the ability to complain that her retained counsel was not competent when she intentionally relinquished her right to be represented by counsel who was certified or who specialized in juvenile dependency law.
(1) Under section 317, subdivision (b), the juvenile court must appoint counsel for an indigent parent unless the court finds the parent has made a knowing and intelligent waiver of counsel. (See In re A.M. (2008) 164 Cal.App.4th 914, 928 [79 Cal.Rptr.3d 620].) A parent in a dependency proceeding may knowingly and intelligently waive the right to counsel after proper advisement by the juvenile court, and may also choose to be represented by retained counsel. (In re Brian R. (1991) 2 Cal.App.4th 904, 921-923 [3 Cal.Rptr.2d 768]; In re Christina H. (1986) 182 Cal.App.3d 47, 49 [227 Cal.Rptr. 41].) The state will only interfere with an individual's choice of legal representation when that choice "will result in significant prejudice" to the individual "or in a disruption of the orderly processes of justice unreasonable under the circumstances of the particular case." (People v. Crovedi (1966) 65 Cal.2d 199, 208 [53 Cal.Rptr. 284, 417 P.2d 868].)
(2) Here, D.W. exercised her right to retain private counsel, who she knew was not a juvenile dependency law specialist, to replace the attorney appointed for her at the inception of the case. The court advised D.W. of her right to be represented by an attorney who was a "certified specialist in juvenile dependency law," presumably referring to "competency" certification in the juvenile court within the meaning of section 317.5 and rule 5.660(d). Under those provisions, all parties who are represented by counsel at dependency proceedings are entitled to competent counsel. Rule 5.660(d) defines "competent counsel" as "an attorney who is a member in good standing of the State Bar of California, who has participated in training in the law of juvenile dependency, and who demonstrates adequate forensic skills, knowledge and comprehension of the statutory scheme, the purposes and goals of dependency proceedings, the specific statutes, rules of court, and cases relevant to such proceedings, and procedures for filing petitions for extraordinary writs."
(3) D.W. expressly waived her right to be represented by an attorney who had the training, skills and knowledge of a juvenile dependency specialist. *257 When the outcome of the proceedings was unfavorable to D.W., she sought to discharge her retained counsel on the ground his lack of juvenile dependency qualifications had not helped her case. Because D.W. knowingly, intelligently and voluntarily chose to proceed with counsel who was not a specialist in juvenile dependency law, she cannot be heard to complain that counsel was not competently representing her precisely because he was not "child dependency qualified."

II

USING SECTION 388 TO RAISE A CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL
In her reply brief, D.W. argues she did not knowingly waive her right to a competent attorney, pointing out the distinction between "certification" and "competence." Even were we to view D.W.'s waiver as limited to a statutory right to counsel certified or trained in juvenile dependency law rather than a due process right to competent counsel (see In re Kristin H. (1996) 46 Cal.App.4th 1635, 1659-1660 [54 Cal.Rptr.2d 722]), D.W. has not shown she was entitled to a hearing on her section 388 petition by which she claimed ineffective assistance of counsel as a means of challenging the denial of reunification services.

A

Petition for Modification Under Section 388
(4) A party may petition the court under section 388 to change, modify or set aside a previous court order. The petitioning party has the burden of showing, by a preponderance of the evidence, that (1) there is a change of circumstances or new evidence, and (2) the proposed change is in the child's best interests. (§ 388; In re Jasmon O. (1994) 8 Cal.4th 398, 415 [33 Cal.Rptr.2d 85, 878 P.2d 1297]; In re Casey D. (1999) 70 Cal.App.4th 38, 47 [82 Cal.Rptr.2d 426].) The petition must be liberally construed in favor of its sufficiency. (Rule 5.570(a); In re Marilyn H. (1993) 5 Cal.4th 295, 309 [19 Cal.Rptr.2d 544, 851 P.2d 826].) "The parent need only make a prima facie showing to trigger the right to proceed by way of a full hearing." (In re Marilyn H., supra, at p. 310.) "`[I]f the petition presents any evidence that a hearing would promote the best interests of the child, the court will order the hearing.' [Citation.]" (In re Jasmon O., supra, at p. 415.) "However, if the liberally construed allegations of the petition do not make a prima facie showing of changed circumstances and that the proposed change would promote the best interests of the child, the court need not order a hearing on *258 the petition. [Citations.] The prima facie requirement is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition." (In re Zachary G. (1999) 77 Cal.App.4th 799, 806 [92 Cal.Rptr.2d 20].) In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case. (In re Justice P. (2004) 123 Cal.App.4th 181, 188-189 [19 Cal.Rptr.3d 801].)

B

Raising a Claim of Ineffective Assistance of Counsel
D.W. contends filing a section 388 petition is the proper procedure to trigger a hearing on the issue of incompetent counsel. She asserts the "escape mechanism" inherent in a section 388 petition can be used to modify any prior order for any reason, and can be filed when attorney error becomes apparent.
(5) In enacting section 388, the Legislature has provided a procedural vehicle to accommodate the possibility that circumstances may change after the reunification period, thereby justifying a change in a prior order. (In re Marilyn H., supra, 5 Cal.4th at p. 309.) A section 388 petition can be used when pertinent statutes do not otherwise provide a remedy. (In re Lance V. (2001) 90 Cal.App.4th 668, 675 [108 Cal.Rptr.2d 847]; Nickolas F. v. Superior Court (2006) 144 Cal.App.4th 92, 106 [50 Cal.Rptr.3d 208].) For example, a parent who is denied notice and an opportunity to be heard at the early stages of a dependency proceeding can challenge findings of proper notice by filing a section 388 petition. (Ansley v. Superior Court (1986) 185 Cal.App.3d 477, 481 [229 Cal.Rptr. 771].) No authority appears to limit the types of issues that can be raised in a section 388 petition, and indeed, the scope of section 388 is sufficiently broad to encompass claims such as incompetent counsel that may require a change in a prior court order.
Nevertheless, when a party seeks to challenge an order because of ineffective assistance of counsel, the customary way to do so is by filing a petition for writ of habeas corpus in the juvenile court.[5] (In re Paul W., supra, 151 Cal.App.4th at p. 53.) Because the habeas corpus statutes specifically provide *259 for relief (id. at pp. 52-55), the use of a section 388 petition to bring a claim of ineffective assistance of counsel before the court seems superfluous.[6]
Instead of filing a section 388 petition to allege ineffective assistance of counsel, D.W. had another remedy by way of a habeas corpus petition, which was available and adequate to fully protect her rights. Nevertheless, because she chose to raise the issue by filing a section 388 petition, we review the propriety of the court's summary denial of her petition.[7]

III

SUMMARY DENIAL OF SECTION 388 PETITION
By filing a section 388 petition, D.W. sought to have the court vacate its jurisdictional and dispositional findings and orders, including an order denying services, and to have the minors placed with her. The petition alleged D.W. did not receive effective assistance of counsel during and after the jurisdiction and disposition hearings. The "new evidence" required by section 388 consisted of numerous tactical decisions and failings of retained counsel which were not known to D.W. earlier. The petition further alleged the minors' best interests would be promoted by being returned to D.W.'s custody and/or by providing her with reunification services so that she could foster the bond they shared.
If, as D.W. argues, counsel's alleged deficiencies required a full evidentiary hearing on her section 388 petition, the juvenile court would be deprived of any discretion to deny a hearing whenever there was a claim of ineffective assistance of counsel. "Such a rule would be antithetical to not only the section 388 petition process but also to the current dependency system as a whole." (In re Justice P., supra, 123 Cal.App.4th at p. 190.) Instead, a hearing must be held only if it appears the best interests of the child may be promoted by *260 the proposed change of order. (Id. at p. 191.) Even assuming D.W.'s realization she had received ineffective assistance of counsel could be a change of circumstances or new evidence within the meaning of section 388, D.W. did not make a prima facie showing the proposed modification having the minors returned to her custody or receiving serviceswould be in the minors' best interests.
One-year-old Jackson and two-month-old Trenton were removed from D.W.'s custody as a result of severe physical abuse. Although D.W. had been aware of Trenton's injuries, she ignored them and delayed getting treatment for Trenton, who was obviously in pain. From this, a reasonable inference can be drawn that D.W. either allowed the abuse to occur or failed to prevent it. She refused to believe Matthew had caused Trenton's injuries and repeatedly chose to protect Matthew rather than her children. Even after completing a parenting class and actively engaging in therapy, D.W. lacked protective skills. She persisted in her belief that Trenton's injuries were accidental, despite Matthew's admission and an expert's opinion to the contrary. D.W. continued to live with Matthew until he was arrested, and missed visiting the minors so that she could attend his criminal proceeding. In the opinion of the Indian expert, the minors would suffer serious emotional damage if placed with D.W. From this evidence, the court could reasonably find the minors would not be safe in D.W.'s custody, and services would not likely prevent reabuse.
(6) Although D.W. consistently visited the minors, engaged them in play and related to them in a parental and loving way, she had no significant bond with them. More importantly, there was no indication the minors were bonded to her. Further, at the time D.W. filed her section 388 petition, the minors had been out of her care for a year and were currently living with the paternal grandfather, who was willing to adopt them. The petition made no showing of how the minors' best interests would be served by depriving them of a permanent, stable home in exchange for an uncertain future. (In re C.J.W. (2007) 157 Cal.App.4th 1075, 1081 [69 Cal.Rptr.3d 197]; In re J.H. (2007) 158 Cal.App.4th 174, 182-183 [70 Cal.Rptr.3d 1] [children need stability and permanency, not protracted legal proceedings that prolong uncertainty for them].) Although D.W. argues returning the minors to her custody would further strengthen the parent-child bond, "[t]he presumption favoring natural parents by itself does not satisfy the best interests prong of section 388." (In re Justice P., supra, 123 Cal.App.4th at p. 192.) Because the liberally construed allegations would not have sustained a favorable decision on the section 388 petition, D.W. was not entitled to an evidentiary hearing and was not denied due process. (In re Zachary G., supra, 77 Cal.App.4th at p. 806; In re Mary G. (2007) 151 Cal.App.4th 184, 205-206 [59 Cal.Rptr.3d 703].)

*261 IV

NO SHOWING OF A DIFFERENT OUTCOME
The essence of D.W.'s argument is that she was improperly prevented from having a fair hearing on the merits of her section 388 petition at which she would have shown prejudice from her retained counsel's errors. Regardless of the unusual procedural posture in which this case comes to us, D.W. made no prima facie showing that had counsel's representation not been deficient, the outcome of the jurisdiction and disposition hearings would have been more favorable to her.
(7) D.W. had a due process right to competent assistance of counsel because the disposition hearing resulted in a referral to a section 366.26 selection and implementation hearing. (In re Arturo A. (1992) 8 Cal.App.4th 229, 239-240 [10 Cal.Rptr.2d 131] [where right to counsel is of constitutional dimension, parent is entitled to competent assistance of counsel].) To prove a claim of ineffective assistance of counsel, D.W. had to show counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. (In re Emilye A., supra, 9 Cal.App.4th at p. 1711, citing Strickland v. Washington (1984) 466 U.S. 668, 688 [80 L.Ed.2d 674, 104 S.Ct. 2052].) She also had to show prejudice, meaning a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Strickland v. Washington, supra, at p. 694.) We need not examine whether counsel's performance was deficient before examining the issue of prejudice; instead, we may reject a claim of ineffective assistance of counsel if the parent does not show the result would have been more favorable but for trial counsel's failings. (In re Nada R. (2001) 89 Cal.App.4th 1166, 1180 [108 Cal.Rptr.2d 493].)
D.W. made no showing there would have been a different outcome had counsel provided what she believed was effective representation. D.W.'s complete lack of credibility as a witness and her refusal to value her children more than Matthew undermined her ability to obtain custody of the minors or reunification services, not any tactical decisions of retained counsel. (In re A.M., supra, 164 Cal.App.4th at pp. 928-929.) Had the court entertained D.W.'s claims as seeking habeas corpus relief, the result would have been the same.

*262 DISPOSITION
The order is affirmed.
McDonald, J., and McIntyre, J., concurred.
NOTES
[1] Statutory references are to the Welfare and Institutions Code.
[2] Rule references are to the California Rules of Court.
[3] As of D.W.'s most recent therapy session in January 2009, she remained unsure of who caused Trenton's injuries.
[4] The court was apparently unaware that a substitution of attorney had been filed on February 11, 2009.
[5] The juvenile court here, while recognizing a section 388 petition was not customarily used to raise claims of ineffective assistance of counsel, mistakenly ruled those claims were appellate issues. Under the California Constitution, the superior court, Courts of Appeal and California Supreme Court all have original jurisdiction to grant habeas corpus relief. (Cal. Const., art. VI, § 10; In re Paul W. (2007) 151 Cal.App.4th 37, 68, fn. 1 [60 Cal.Rptr.3d 329] (conc. opn. of Bamattre-Manoukian, J.).)
[6] We believe the mechanism of filing a section 388 petition is unnecessarily burdensome and not particularly conducive to making a claim of ineffective assistance of counsel. By choosing to present her argument in this way, D.W. was required to make a prima facie showing of changed circumstances and best interests before she was entitled to a hearing at which she then had to make a prima facie showing she did not receive "effective representation by trial counsel" and "was prejudiced thereby." (In re Emilye A. (1992) 9 Cal.App.4th 1695, 1711 [12 Cal.Rptr.2d 294].)
[7] D.W. acknowledges the law is unclear as to whether a section 388 petition is a proper vehicle for modifying a prior order because of ineffective assistance of counsel. Consequently, she also filed a petition for writ of habeas corpus in this court, claiming she did not receive adequate assistance of counsel at the jurisdiction and disposition hearings, and but for counsel's errors, the court would have ordered reunification services for her. (In re D.W. (Apr. 29, 2010, D056120) [petn. denied].) Because the writ petition involves the same issue as that raised in the appeal, we consider the two matters at the same time.