Filed 3/17/15  In re C.V. and Orion M. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.111.5.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re C.V. and ORION M.,  Persons Coming Under the Juvenile Court Law. | 2d Juv. No. B261009 (Super. Ct. No. JV49706) (San Luis Obispo County) |
| SAN LUIS OBISPO COUNTY DEPARTMENT OF SOCIAL SERVICES,  Plaintiff and Respondent,  v.  KELLY H,  Defendant and Appellant. | |

Kelly H. (mother) seeks extraordinary writ review of a December 3, 2014 juvenile court order denying her petition (Welf. & Inst. Code, § 388)[1] to return her children, C.V. and Orion M., and an order setting the matter for a permanent placement hearing (§ 366.26, Cal. Rules of Court, rule 8.452).  The trial court found that reinstatement of family maintenance services or return of the children was not in their best interests.  (§ 388.)  We deny the writ petition.

### Facts and Procedural History

Mother has a long history of drug and alcohol abuse and domestic violence that resulted in the removal of C.V. and Orion M. on December 29, 2010, for general neglect and physical abuse. (§ 300, subds. (b) & (e)).)  Orion tested positive for

---

[1] All statutory references are to the Welfare and Institutions Code.

marijuana at birth and was first placed in foster care when he was six months old. His birth father had a long history of alcohol related arrests and domestic violence with mother.

On July 14, 2011, the children were returned and mother was provided family maintenance services. In January 2012, San Luis Obispo County Department of Social Services (DSS) placed the children in a shelter after mother drank and drove with the children in the car. Family members reported that mother was using drugs and had punched C.

The children were difficult to place due to their extreme behaviors. Orion had significant speech delays and suffered from an eating disorder. He was physically aggressive and would walk up to kids and shove or hit them. Orion (age 5) was physically abusive with C. and his foster mother, and masturbated seven or eight times a day to relieve stress. The sexual behavior increased when he was stressed or anxious.

C. (age six) suffered significant development issues, wetted her bed, and was unable to sit still. She had frequent outbursts, screamed and yelled, was physically aggressive, and had poor social skills. In February 2012, C. was prescribed psychotropic medication for behavioral problems that included tantrums, hitting, spitting, swearing, sexual acting out, and putting dangerous objects in her ears.

Although mother missed no supervised visits, the children acted out before and after visits. The service providers and foster mother, however, saw a remarkable improvement after contact with the children's fathers was suspended and phone contact with mother was stopped.[2]

---

[2] C.'s birth father never contacted DSS to visit with C. Orion's father scheduled a supervised visit in July 2012, but did not show. In 2012, Mother let Orion's father (unbeknownst to the social worker) participate in phone visitation. After the calls, there was a drastic difference in C.'s behavior. C. became withdrawn at school and experienced an increase in bed-wetting, lying, and verbal aggression. Orion was upset, had problems falling asleep, and masturbated more frequently at daycare and in foster care.

2

The trial court terminated reunification services on April 25, 2012   and, on June 20, 2013, ordered a Planned Permanent Living Arrangement because the children still had emotional and behavioral problems.  The children's therapist recommended that supervised visits cease because C. and Orion suffered a significant increase in emotional dysregulation  (i.e., increased tantruming, impulsivity, physical aggression, nocturnal enuresis) after the visits.   It was a concern and jeopardizing their foster care and daycare placements.

On July 1, 2013, the trial court suspended visitation because supervised visits were doing more harm than good.  After visits were halted, the children were provided special services and showed progress.  C.'s therapist reported a "huge difference" in C.'s behavior after visits were discontinued.  Orion's progress was not as dramatic but he was improving and less disruptive.

On October 2, 2014, after completing 10 months of residential drug treatment, mother filed a section 388 petition for return of the children and family maintenance services.  The petition alleged that mother was addressing her alcohol problem and had broken off her relationship with the children's abusive father.  Before the hearing, DSS filed a petition to change the permanent placement plan to adoption because the children had made significant progress and the foster mother, after long thought and consideration, wanted to adopt.

At the December 3, 2014 contested hearing on the petitions mother showed that she had graduated from an alcohol treatment program, was living at Bethel House, was employed and owned a vehicle, was attending city college and AA, and on a waiting list for individual therapy.  DSS and C.'s therapist reported that resumption of visits would derail the children's progress.  In the last six months, C. only mentioned mother once in the CASA worker's presence and that was just to say her name.  The social worker (Robyn Yakush)  testified that the children were bonded to their foster mother and that reinstating visits would disrupt their behavioral and emotional progress and "be really confusing for them."  C. wanted to live with her foster mother "forever," and like Orion, just starting to address the trauma that she experienced under mother's care.

3

At the conclusion of the hearing, the trial court found there was no change of circumstances and that return of the children or visitation was not in their best interests.  (§ 388.)  The trial court denied mother's section 388 petition and granted DSS's request to change the permanent placement plan to adoption and set the matter for a section 366.26 hearing.

*Section 388 Petition To Return Children*

The grant or denial of a section 388 petition is committed to the sound discretion of the trial court and will not be disturbed on appeal absent a clear abuse of discretion.  (*In re Shirley K.* (2006) 140 Cal.App.4th 65, 71.)  Mother bears the burden of showing that new or changed circumstances exist and that modification of the existing order (no visitation) is in the children's best interest.  (*In re S.J.* (2008) 167 Cal.App.4th 953, 959.)

Although mother has made progress addressing her alcohol abuse, the evidence shows that family maintenance services or reunification would be detrimental to the children.  Mother has not progressed beyond supervised visits and has not seen the children for 18 months.  Before visits were suspended, the children acted out and regressed.  C.'s therapist reported that C. loved mother but felt unsafe with her and in constant fear she would have to go back and live with mother.  To address that fear, the social worker was asked to meet with C. and the therapist to discuss why it was unlikely C. would go back to  live with mother.  C. said that she wanted to live with her foster mother "forever and ever, and ever and ever. "

Like C., Orion had a lot of negative memories about his parents.  When Orion talked about mother, it was about the police coming and "mommy going to jail." The visits triggered aggressive behavior that jeopardized Orion's daycare and foster care placement. Following one visit, Orion knocked a little girl down at preschool, straddled her, and punched her repeatedly in the face.  In January 2013, Orion got upset during a phone visitation and had screaming fits for days on end.  Orion had major meltdowns at daycare and engaged in extreme behavior, pushing other kids, jumping on furniture, hitting and kicking walls, refusing to nap, and smearing feces over the bathroom.

4

Mother's visits were a concern because the children were acting out and re-traumatizing each other  DSS recommended that the trial court consider separate placements but the children's behavior suddenly improved after visitation was halted. The trial court noted that this is "the only case where  [DSS] has asked me and advocated to have the children split up so they could potentially be adopted separately, and we're all fortunate that that didn't happen. . . .  [I]t is because, in large part, the stability of this placement . . . . "  The social worker opined that visitation or reunification with mother would jeopardize all the progress that had been made.  Although mother was starting to address her alcohol abuse, it was unknown how she would deal with the stress of independent living.

Where, as here, reunification services are terminated, the focus shifts to the needs of the children for permanency and stability.  (*In re A.A.* (2008) 167 Cal.App.4th 1292. 1320; *In re D.R.* (2011) 193 Cal.App.4th 1494, 1512-1513.)  The burden is on the parent to prove changed circumstances pursuant to section 388 to revive the reunification issue.  (*In re Zacharia D.* (1993) 6 Cal.4th 435, 447.)  The disruption on an existing psychological bond between dependent children and their caretaker is an important factor bearing on any section 388 motion.  (*In re Jasmon O.* (1994) 8 Cal.4th 408, 414-418.)  So too here.  In the words of the social worker, C. and Orion are "stable in school.  They're stable at home.  I didn't know two years ago that I would be able to say that. [¶]  . . . [R]eintroducing visits would be really confusing for them.  I think they finally feel settled, like they're going to stay here, like they have a place to live. "

Mother makes no showing that the children's best interests would be served by depriving them of a permanent, stable home in exchange for an uncertain future.  (*In re Jackson W.* (2010) 184 Cal.App.4th 247, 260.)  We reject the argument that the trial court erred in denying mother's section 388 petition or in granting DSS's request to change the  permanent placement plan and setting a section 366.26 hearing to free the children for adoption.  Orion is currently living in his sixth foster care placement and both Orion and C. have spent half their lives in foster care.  "Children should not be

5

required to wait until their parents grow up." (*In re Rikki D.* (1999) 227 Cal.App.3d 1624, 1632.)

The petition for extraordinary relief is denied.

<u>NOT TO BE PUBLISHED.</u>


YEGAN, J.

We concur:


GILBERT, P.J.


PERREN, J.

6

Linda D. Hurst, Judge

Superior Court County of San Luis Obispo

_____


Theresa G. Klein, under appointment by the Court of Appeal, for Appellent.


Rita Neal, County Counsel, County of San Luis Obispo, Leslie H. Kraut, Deputy County Counsel, for Respondent.