Filed 7/25/16  In re D.A. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re D.A., a Person Coming Under the Juvenile Court Law. | D069848 |
| IMPERIAL COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent, v. D.A., Defendant and Appellant. | (Super. Ct. No. JJP2759) |

APPEAL from postjudgment orders of the Superior Court of Imperial County, William D. Quan, Judge.  Affirmed.

Neil R. Trop, under appointment by the Court of Appeal, for Defendant and Appellant.

Katherine Turner, County Counsel, Haislip W. Hayes and Lisa Sanchez, Deputy County Counsel, for Plaintiff and Respondent.

# I

## INTRODUCTION

Father[1] appeals a juvenile court order summarily denying his petition under Welfare and Institutions Code[2] section 388, subdivision (a), for modification of the order terminating his reunification services.[3]  Father contends the court erred in denying the petition without affording him an evidentiary hearing because he alleged a prima facie case compelling a hearing.  We disagree and affirm the order.

# II

## BACKGROUND

The child became a dependent of the court after a social worker found the child living in unhealthful conditions and the child's hair tested positive for methamphetamine and amphetamine.  Not long after the child's removal from the parents' home, the court placed the child with foster parents.  The child was two years and four months old at the time and had significant developmental delays.  After a few months in the foster parents' care, the child's developmental delays had greatly diminished.  Within a year in their care, the child no longer had any developmental delays.

---

[1]    We refer to the parties generically to preserve confidentiality.

[2]    Further statutory references are to the Welfare and Institutions Code unless otherwise stated.

[3]    Father also appeals an order terminating his parental rights and selecting adoption as the permanent plan for the child; however, father did not raise any issues regarding the propriety of this order in his opening brief.

Because the child was under age three at the time of removal, the court advised the parents they had limited time to reunify with the child. (See § 361.5, subd. (a)(1)(B) & (3).) Notwithstanding this advisement, by the six-month review hearing, father had made only minimal progress in alleviating the causes of the child's removal and had not made substantive progress in his court-ordered treatment plan. Consequently, the court terminated his reunification services.[4]

Mother continued to receive reunification services until the 18-month review hearing, at which time the court terminated her services. Although the court found mother had made significant progress toward alleviating the causes of the child's removal, the court found returning the child to mother's care would create a substantial risk to the child's physical or emotional well-being. At the subsequent selection and implementation hearing (§ 366.26), consistent with an agreement by the parties, the court selected legal guardianship by the foster parents as the child's permanent plan and issued letters of guardianship (§ 366.26, subd. (b)(5)).

Six months later, the foster parents petitioned under section 388, subdivision (a), to change the order selecting legal guardianship as the child's permanent plan, reinstate dependency jurisdiction, and set a new selection and implementation hearing. According to the petition, the purpose of selecting legal guardianship as the child's permanent plan was to allow mother and father to reestablish their bond with the child through frequent

---

[4]     At the time the court terminated his reunification services, father had eight other children from eight other relationships. Two of the children had died, two had been adopted through the foster care program, and father did not have ongoing relationships with the others.

3

and meaningful visitation.  However, after the court issued the letters of guardianship, father had not visited the child and mother's visits were infrequent and sporadic. Meanwhile, the child had bonded with the foster parents and their younger child, whom they had adopted through the foster care program.

The court set a hearing on the petition.  At the conclusion of the hearing, the court granted the petition, reinstated dependency jurisdiction, and set a new selection and implementation hearing.[5]

Before the new selection and implementation hearing, father petitioned under section 388, subdivision (a), to change the order terminating his reunification services and obtain additional reunification services.  According to the petition, the changed circumstances warranting modification of the order were father's completion of a residential detoxification program and his participation in a residential rehabilitation program.  The petition further stated, "It would be in the child's best interest to reunify with a biological parent who is clean and sober."  The court summarily denied the petition, finding the proposed change would not promote the child's best interests.[6]

A few days later, the court conducted the new selection and implementation hearing.  By then, the child was a little over five years old and had lived with the foster parents almost three years.

---

[5]    Mother and father have another child who was born while this case was pending below.  The day after the court granted the foster parents' modification petition, that child was taken into protective custody and the court declined to order reunification services.

[6]    Mother filed a similar petition, which the court summarily denied for the same reason.  Mother has not appealed the denial of her petition.

According to a report prepared for the hearing, father had only visited the child once between the time the court terminated father's reunification services and the time the court selected legal guardianship as the child's permanent plan. After the foster parents became the child's legal guardians, father did not attempt to visit the child until four months after the foster parents filed their modification petition.

Once the court granted the foster parents' modification petition and reinstated dependency jurisdiction, father began visiting the child once a month. At the time, father, a long-time methamphetamine user, was in a court-ordered 30-day detoxification program. He subsequently completed the detoxification program and entered a companion inpatient drug rehabilitation program, where he had been for about three months. The child's visits with father caused the child to have nightmares and, on one occasion, a toileting accident.

After considering the report and other evidence, including father's testimony, the court terminated father's parental rights. The court then selected adoption as the child's permanent plan.[7]

## III

## DISCUSSION

" 'A juvenile court order may be changed, modified or set aside under section 388 if the petitioner establishes by a preponderance of the evidence that (1) new evidence or

---

[7] The court also terminated mother's parental rights. A few days later, during a group parenting program, mother threatened to pay someone to kill the foster parents. The threat was reported to law enforcement. Mother has not appealed the termination of her parent rights.

changed circumstances exist and (2) the proposed change would promote the best interests of the child. [Citation.] A parent need only make a prima facie showing of these elements to trigger the right to a hearing on a section 388 petition and the petition should be liberally construed in favor of granting a hearing to consider the parent's request.' [Citation.]

" 'However, if the liberally construed allegations of the petition do not make a prima facie showing of changed circumstances and that the proposed change would promote the best interests of the child, the court need not order a hearing on the petition. [Citations.] The prima facie requirement is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition.' [Citation.]" (*In re Mary G.* (2007) 151 Cal.App.4th 184, 205.)

"We review a summary denial of a hearing on a modification petition for abuse of discretion. [Citation.] Under this standard of review, we will not disturb the decision of the trial court unless the trial court exceeded the limits of legal discretion by making an arbitrary, capricious or patently absurd determination. [Citation.]" (*In re A.S.* (2009) 180 Cal.App.4th 351, 358; *In re G.B.* (2014) 227 Cal.App.4th 1147, 1158.)

Here, father did not make a prima facie case as to either element.[8] As to the first element, father's recent completion of a residential detoxification program and entry into

---

[8] Father contends we may not base our decision on his failure to make a prima facie case as to the first element because the juvenile court did not base its decision on this ground. However, " '[i]f the *decision* of the lower court is right, the judgment or order will be affirmed regardless of the correctness of the grounds upon which the court

a residential treatment program reflected only changing, not changed circumstances. Father had a chronic substance abuse problem and was only in the early stages of addressing it when he filed his modification petition. (*In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223 [recent sobriety from completion of drug treatment late in a dependency proceeding, while commendable, reflects a changing circumstance, not a substantial changed circumstance]; *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 531, fn. 9 ["It is the nature of addiction that one must be 'clean' for a much longer period than 120 days to show real reform"].)

As to the second element, father relies solely on his status as the child's natural parent to state a prima facie case. However, "[t]he presumption favoring natural parents by itself does not satisfy the best interests prong of section 388." (*In re Justice P.* (2004) 123 Cal.App.4th 181, 192; *In re Jackson W.* (2010) 184 Cal.App.4th 247, 260.) At the time father filed his modification petition, "the focus of the dependency proceedings had shifted from reunification to the child's need for a stable and permanent home. [Citations.]" (*In re Casey D.* (1999) 70 Cal.App.4th 38, 48.) Thus, to state a prima facie case as to the second element, father was required to allege with specificity how the proposed changed order would advance the child's need for permanency and stability. (*In re G.B.*, *supra*, 227 Cal.App.4th at p. 1157 [the allegations in a modification petition must describe specifically how the proposed changed order will advance the child's best interests]; *In re J.C.* (2014) 226 Cal.App.4th 503, 527 ["after reunification services have

reached its conclusion.' [Citation.]" (*In re Jeremy S.* (2001) 89 Cal.App.4th 514, 528, fn. 3, disapproved on another point in *In re Zeth S.* (2003) 31 Cal.4th 396, 408, 413-414.)

7

terminated, a parent's petition for . . . an order . . . reopening reunification efforts must establish how such a change will advance the child's need for permanency and stability"].)

Father did not satisfy this requirement, nor does it appear on this record he could have done so. Father was only in the beginning stages of overcoming his substance abuse and establishing himself. He had limited visits with the child and the visits adversely affected the child. The foster parents had cared for the child for most of the child's life, the child was bonded to their family and thriving in their care, and they were committed to the child's adoption. " 'A petition which alleges merely changing circumstances and would mean delaying the selection of a permanent home for a child to see if a parent . . . might be able to reunify at some future point, does not promote stability for the child or the child's best interests. [Citation.] " '[C]hildhood does not wait for the parent to become adequate.' " ' [Citations.]" (*In re Mary G.*, *supra*, 151 Cal.App.4th at p. 206.)

8

## IV

## DISPOSITION

The orders denying father's modification petition and terminating his parental rights are affirmed.

McCONNELL, P. J.

WE CONCUR:


BENKE, J.


PRAGER, J.*

---

\*     Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9