Filed 4/18/23  In re Baby Boy V. CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re BABY BOY V., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY, Plaintiff and Respondent, v. VICENTE V., Defendant and Appellant. | G061810 (Super. Ct. No. 21DP0746) O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Robert Gerard, Judge.  Affirmed.

Christine Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, Karen L. Christensen and Deborah B. Morse, Deputy County Counsel, for Plaintiff and Respondent.

No appearances for the Minor.

\* \* \*

## INTRODUCTION

"Modification orders in juvenile dependency court are authorized" and governed by Welfare and Institutions Code section 388.[1] (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 526.) "Essentially, the statute requires a showing of a change of circumstances and that modification based on that change would be in the 'best interests' of the" child. (*Id.* at p. 526.) This necessarily means even a genuine change of circumstances "is not enough." (*Id.* at p. 529.) The person petitioning for a modification under section 388 must also show "that the undoing of the prior order would be in the best interests of the child." (*Ibid.*)

In this case, the appellant was a grandfather seeking placement of his daughter's infant. As a relative, he was initially considered for placement of the child, but could not be immediately approved due to some issues. In the meantime, the baby was placed with a foster family, flourishing in their care. The foster family now seeks to adopt the child. Because of unexplained and highly concerning delays in responding to the grandfather's requests for visitation and reassessment of his home, the child had only seen his grandfather once by the time reunification services with his mother were terminated in May of 2022. By that time, when the grandfather sought modification of the child's placement under section 388, the child was well settled.

We encourage the agencies involved to investigate and rectify the causes for the troubling delays in this case. But as frustrated as we know the appellant must be,

---

[1] All further statutory references are to the Welfare and Institutions Code.

we do not think the juvenile court abused its discretion in denying his section 388 motion and maintaining the child's placement.

<strong>FACTS[2]</strong>

Baby Boy V., also known as J.M.[3], was removed from his parents' custody at birth when both his and his mother's urine toxicology tests came back positive for methamphetamine at the hospital. The infant exhibited withdrawal symptoms and both parents had histories of substance abuse and domestic violence. He was placed in October 2021 with his current foster parents, his third and most successful placement. Reunification services with his parents were terminated by May of 2022.

Thus far, J.M. has had significant developmental delays, including a gross motor delay and speech delay. However, his foster parents started him in physical and occupational therapy in February 2022, and he has made good progress since then. The social worker observed that he used to be unable to crawl well or lift himself up to stand, but with the help of therapy, he had made marked improvements in these areas. As of August 1, 2022, he had also made progress with chewing and moving items on his own. He was able to close his lips around a straw to drink and put water in a jar for the first time. Additionally, J.M. had adjusted quite well to his new home where he has plenty of love, toys, food, his own room, and a sibling.

Prior to the disposition hearing, which occurred around August 26, 2021, the child's maternal grandfather, appellant Vicente V., requested placement under section 361.3. Orange County Social Services Agency (SSA) denied his request because both the mother and Vicente's wife (who'd had brushes with the law herself) still lived in his home at the time, and social workers felt uncomfortable having them around the child.

---

[2] The record in this appeal is extremely thin. Dependency proceedings were initiated in July of 2021, and we only have records dating from May 2022. The dependency petition was not included. Nor do we have the bulk of the social services reports, case plan documents, court orders, notices or transcripts of hearings taking place from the inception of the case to the time of the ruling being appealed. We have pieced the relevant facts together as best we can from what we have, and it is enough to give us confidence in our result.

[3] We will refer to the child hereinafter by his given initials.

Vicente agreed he could only receive placement if those issues were addressed, but he was unwilling to have his wife (mother's stepmother) leave their marital home. As a result, SSA refused to place the baby with Vicente.

Vicente appealed this decision through the Resource Family Approval (RFA) process,[4] and for reasons that are unclear from the record, this took approximately nine months to be resolved. SSA finally approved his home for placement on April 14, 2022. But in the meantime, Vicente received no visitation with his grandson. The juvenile court was unsure itself as to why Vicente's request for visitation was not addressed sooner, but the upshot was that by the time of the contested six-month review hearing on May 27, 2022, he had only visited J.M. once.

In the May 27 hearing, the court addressed mother's oral motion under section 388 formally requesting relative placement with Vicente. The court terminated reunification services over her objection and denied her motion for placement. The court felt J.M. was thriving in his current placement, and given the medical and developmental issues he was already suffering, it was not in his best interest to remove him from a place he knew and put him in a home he did not. The court found no malfeasance by SSA even though there were what it called "administrative snafus." And it noted SSA's initial refusal to place the child with Vicente was proper and justified, even though he later met the conditions required to receive the child into his home.

Nonetheless, the juvenile court was very sympathetic to Vicente and his wife, and ordered that they be permitted four hours of supervised visitation until the time of the permanency planning hearing in September 2022.

On September 13, 2022, Vicente filed his own section 388 petition to modify the previous ruling denying placement. He contended there were changed

---

[4] The RFA process, created through section 16519.5, "replace[d] the existing multiple processes for licensing foster family homes, certifying foster homes by licensed foster family agencies, approving relatives and nonrelative extended family members as foster care providers, and approving guardians and adoptive families." (*Id.*, subd. (a).)

circumstances, because he and his wife had been visiting J.M. since May and a positive familial bond had formed. He argued placing the baby with his biological family would serve the child's best interests more than having him continue in foster care.

Even acknowledging the benefit of a bond with his biological family, the juvenile court denied Vicente's petition, stating: ". . . [F]ollowing th[e] initial disposition hearing, the consideration of relative placement as a matter of law, simply does not arise, . . . after termination of reunification services, unless a new placement must be made for the child. That is the law." The court relied on *In re M.H.* (2018) 21 Cal.App.5th 1296 (*M.H.*) on this point. It also found J.M.'s best interests would not be served by a switch in his placement, since he had settled so well into his foster home.

## DISCUSSION

The placement of a dependent child is a decision committed "to the sound discretion of the juvenile court, and the trial court's ruling should not be disturbed on appeal unless an abuse of discretion is clearly established." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.) On appeal, Vicente argues the juvenile court abused its discretion when it summarily denied his section 388 petition because it improperly focused on the applicability of the relative placement preference under section 361.3[5] rather than the standards for modification under section 388. We disagree. It was appropriate for the juvenile court to assess the applicability of the relative placement preference because it was relevant to the showing Vicente needed to make under section 388 in order to secure the relief he sought.

A section 388 petition can be filed by any person having an interest in a dependent child and it can seek to "change, modify, or set aside any order" previously made by the juvenile court "upon grounds of change of circumstance or new evidence[.]"

---

[5]     This statutory principle in dependency proceedings requires preferential consideration to be given to requests by relatives of the child for placement under section 361.3, subdivision (a), using the factors enumerated within the subdivision. This means the relative must be "the first placement to be considered and investigated" by the social services agency. (*Id.*, subd. (c)(1).)

(§ 388, subd. (a)(1).) The court may deny such a petition without a hearing if, among other things, the petition "fails to state a change of circumstance or new evidence that may require a change of order . . . or fails to show that the requested modification would promote the best interest of the child." (Cal. Rules of Court, rule 5.570, subds. (d)(1) & (2).)

Thus, absent a prima facie showing as to the two required elements for section 388 relief, the trial court may summarily refuse to modify its previous orders. "'A prima facie case is made if the allegations demonstrate that these two elements are supported by probable cause. [Citations.] It is not made, however, if the allegations would fail to sustain a favorable decision even if they were found to be true at a hearing. [Citations.] While the petition must be liberally construed in favor of its sufficiency [citations], the allegations must nonetheless describe specifically how the petition will advance the child's best interests.' (*In re G.B.* [(2014)] 227 Cal.App.4th [1147,] 1157.) In determining whether the petition makes the required showing, the court may consider the entire factual and procedural history of the case. (*In re Jackson W.* (2010) 184 Cal.App.4th 247, 258.)" (*In re K.L.* (2016) 248 Cal.App.4th 52, 61-62.)

Vicente sought modification of the court's May 27, 2022 ruling denying his request for relative placement. The changed circumstance he cited was the visitation with J.M. since the May hearing. During the months the couple was visiting J.M., they were developing a positive familial relationship.[6] At the hearing on the petition, Vicente's lawyer argued the visits themselves were sufficient to get him over the prima facie threshold for changed circumstances, and a hearing was requested to allow them to "flesh out all of the information" SSA had failed to include in its reports about the quality of the visits.

---

[6] To his motion, Vicente attached many heartwarming photographs showing J.M. smiling, laughing, playing and being held by various family members during his visits.

While we acknowledge the visits may indeed have changed circumstances, the juvenile court was within its discretion to deny Vicente a hearing on this showing. Citing *M.H.*, the court concluded Vicente and his wife could no longer have the benefit of the relative placement preference because it did not apply as a matter of law after termination of reunification services, unless a new placement was required. More importantly, the court found it would not be in J.M.'s best interest to make the change in placement because he was a 14-month-old special needs child who had acclimated exceptionally well to his foster home for over a year by the time the petition was heard. And his foster family was interested in providing permanency for him.

The trial court may, in part, have taken a keen interest in *M.H.* because it is a recent case which repeatedly cites our opinion in *In re Lauren R.* (2007) 148 Cal.App.4th 841 (*Lauren R*.).[7] *M.H.* held the relative placement preference no longer applied after reunification services were terminated. And we have recently stated words to a similar effect: "After the court terminates services, the applicable statutes reflect a shift in policy toward promoting a permanent and stable environment for the child." (*Amber G. v. Superior Court* (2022) 86 Cal.App.5th 465, 489 (*Amber G*.).) It was not error for the juvenile court to acknowledge this shift, given that Vicente's section 388 motion was being heard several months after reunification services were terminated.

Moreover, as we stated in *Amber G.*, the "statutorily created preferences" in dependency court "are not to be automatically applied and should not be treated the same as evidentiary presumptions. To the contrary, the statutes discussing each preference require the consideration of multiple factors all dependent on an examination of evidence relating to the minor's current circumstances." (*Amber G., supra,* 86 Cal.App.5th at p. 489.) The preference is not a guarantee of placement. (See *In re Joseph T.* (2008) 163

---

[7]     The court referred to "the overriding or overarching law set forth in *M.H.* and the cases that preceded *M.H.* that are all cited and quoted at length in *M.H*.," which would include *Lauren R.*

Cal.App.4th 787, 798.)  Instead, it allows only for preferential *consideration* of relatives before nonrelative caregivers during the reunification period.

Indeed, our record indicates Vicente *was* given preferential consideration when he sought placement before the disposition hearing, and he was unable or unwilling to meet the agreed conditions for such placement at the time.  In the meantime, J.M. was developing a closer and closer relationship with his foster family.

To his credit, Vicente sought RFA review of the denial of placement, and he appears continually to have requested visitation.  For reasons outside his control, the RFA process took far longer than it should have, and he was given almost no visitation with J.M. until May 2022.  We echo *Amber G.* in finding such delays and lapses simply unacceptable when a dependent child is in the critical first years of his life.  (*Amber G., supra,* 86 Cal.App.5th at p. 496.)  To the extent they represent "administrative snafus" in the system, as the juvenile court characterized them, we urge SSA to undertake appropriate process assessments to ensure these delays and lapses do not become the norm.

But ultimately, J.M.'s best interests reign supreme, and in evaluating this, we must defer to the trial judge who was there, saw and heard the parties, and lived with the case for many long months.  The juvenile court clearly felt J.M. was in the best placement for his needs despite having formed a positive relationship with Vicente and his wife in the period between May and September 2022.  We cannot disturb such decisions absent an abuse of discretion.  Finding none, we affirm.

## DISPOSITION

The judgment is affirmed.


                                                     BEDSWORTH, J.

WE CONCUR:


O'LEARY, P. J.


GOETHALS, J.