Filed 8/24/22  In re S.S. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re S.S., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. H.S., Defendant and Appellant. | E078257 (Super.Ct.No. J282749) OPINION |

APPEAL from the Superior Court of San Bernardino County.  Lynn M. Poncin, Judge.  Affirmed.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, and Svetlana Kauper, Deputy County Counsel, for Plaintiff and Respondent.

1

Appellant H.S. (father) appeals from the juvenile court's summary denial of his Welfare and Institutions Code[1] section 388 petition regarding his daughter, S.S. (the child).  We affirm.

PROCEDURAL BACKGROUND

*Background from Case No. E077309*[2]

"On October 9, 2019, the San Bernardino County Children and Family Services (CFS) filed a section 300 petition on behalf of the child, alleging that she came within the provisions of subdivisions (b) (failure to protect) and (j) (abuse of sibling).  The child was 10 years old at the time.  The petition specifically alleged that father and the child's mother, T.S. (mother), . . . failed to adequately protect the child from the conduct of the child's brother, L.J., . . . and that father and mother (the parents) had two previous dependency cases through Los Angeles County regarding the child's sibling, C.S.  The petition further alleged that mother had a history of substance abuse.

"The social worker filed a detention report and stated that on October 6, 2019, CFS received a referral alleging caretaker absence, general neglect, and physical abuse.  It was reported that mother left the child at home with her adult brother, L.J.  Mother told

---

[1]  All further statutory references will be to the Welfare and Institutions Code unless otherwise noted.

[2]  This procedural background is taken directly from this court's opinion in *In re S.S.* (Feb. 10, 2022, E077309) [nonpub. opn.].  By order dated January 11, 2022, this court ordered the record in case No. E077309 incorporated in the instant case, case No. E078257.

2

the child to leave if she felt uncomfortable with him, but when the child attempted to leave, he tried to drag her back into the house.  The child grabbed a box cutter and cut him.  The police attempted to reach mother, but she did not answer her phone or call back.  The police called father, but he said he was unable to come to get the child because he was in Los Angeles.  [¶]  . . .  [¶]

"When mother finally came to the police station, she appeared fidgety, her eyes were glossy, and she had difficulty following the conversation with the officer.  Mother said she knew her son smoked marijuana and that he might be using crystal methamphetamine.  She said she would leave the child with him if she had to go to the store.  Mother initially denied any physical altercations with L.J., but then described a time when he tackled her.  When the child attempted to intervene, he pushed the child.  Mother described another time when he tried to attack her (mother).  When asked why she continued to leave the child with L.J., she denied that the child ever told her she was uncomfortable with him or afraid of him.  Mother continuously said the child was fine with L.J.  [¶]  . . .  [¶]

"The court held a detention hearing on October 10, 2019, and detained the child. [¶]  The social worker filed a jurisdiction/disposition report on or around November 1, 2019, recommending that the child be removed from the parents' care and that both parents be offered reunification services. The social worker reported that mother admitted being a recreational user of cocaine, stating that she started using at the age of 18 and used it on and off for months at a time since then.  (She was 51 years old at the time of the writing of the report.)  Mother said she relapsed and resumed using cocaine over the

3

past two months. On October 24, 2019, father stated that he was aware of mother's past drug history, but was not aware that she had used drugs recently. [¶]

"On October 24, 2019, the social worker interviewed father, who said he had not been present in the home most of the time since he was seeking housing in Los Angeles County. He added that he was a commercial truck driver and was only home three or four days a month. However, he was no longer able to work as a truck driver, due to health issues. Since he had no income and did not want to be a burden on his family, he moved out and signed up for homeless services in Los Angeles County. Mother reported that the idea was for father to obtain housing in Los Angeles County utilizing the 'homeless voucher' and then attempt to transfer the voucher to San Bernardino County and add mother and the child to his case, so the family could benefit from Section 8 housing. The social worker stated that the problems requiring intervention were mother's substance abuse, father's absence from the home and lack of involvement in parenting, and mother's poor parenting decisions. She further noted that mother and father's lack of ability to co-parent, due to father being out of the home the majority of the time, affected the family's ability to function.

"The social worker also reported on the parents' child welfare history. On September 21, 2003, Los Angeles County received a referral alleging caretaker absence by mother. It was reported that mother was arrested for using crack cocaine, and the allegations were substantiated. Between September 21, 2003, and December 10, 2004, the parents had an open case in Los Angeles County regarding C.S. . . . The allegations in that case included that mother had a substance abuse history, and she was arrested for

4

child endangerment, and that father knew of her substance abuse, but continued to leave C.S. in her care, thereby failing to protect the child. The petition also alleged that father physically abused C.S. The parents later reunified with C.S., after completing parenting education classes, family counseling, and other requirements. Subsequently, between February 17, 2005, and February 13, 2006, they had another open case with Los Angeles County regarding C.S. . . . The petition alleged that the parents had a history of domestic violence and had violently assaulted each other in C.S.'s presence, that father had physically abused C.S., and that mother had a substance abuse history. The parents eventually reunified with C.S., after successfully completing the court-ordered programs.

"The court held a jurisdiction/disposition hearing on November 1, 2019, and sustained the petition, declared the child a dependent, removed her from the parents' custody, and ordered the parents to participate in reunification services. Father's case plan required him to complete a parenting education program. . . .

"The social worker filed a six-month status review report on May 29, 2020, recommending that the parents continue to be provided with reunification services. . . . [¶] . . . [¶] The social worker spoke with the parents, and father reported that he completed his parenting classes. Mother said she completed her parenting classes, therapy, and outpatient treatment. Nonetheless, the social worker opined that it would be detrimental to return the child to either parent since they had not had unsupervised visits with her. Furthermore, the parents lived in separate homes most of the time, and their homes needed to be assessed before the child could be returned. The social worker stated

5

that the parents also needed to complete individual therapy and show they had benefited from it.

"The social worker filed an addendum report on June 1, 2020, and attached a copy of a police report documenting a domestic violence incident between father and mother on April 20, 2020. Police responded to a call at mother's residence. The officer observed that mother had blood running down her face, coming from the corner of her eye. Mother reported that she and father had a verbal argument that escalated, and she went to the bedroom and shut the door. Father was still angry at her and began pounding on the bedroom door and threatening her. Mother became fearful, so she left the bedroom, pushed past him, and went to the kitchen to grab a hammer. When father saw her with the hammer, he took it from her and struck her in the face with his fist, causing her to fall onto the floor. Father continued to hold the hammer as he stood over the victim. He eventually put it down, and the victim had L.J. call the police. Father was arrested. . . . Subsequently, the social worker had separate telephone conversations with father and mother. Mother said they had an argument, and that father was arrested, but she denied any domestic violence and said she did not know who called the police. She also denied having any physical injuries. Father denied they had a verbal argument and said he told the police there was no arguing, fighting, or hitting, and he did not know why someone would call the police. He said he was arrested that night and was released from custody early the next morning.

"The court held a six-month review hearing on June 5, 2020, and continued the parents' reunification services. The case plan was updated to require that they participate in a domestic violence program. [¶]

"The social worker filed a 12-month status review report on October 2, 2020, recommending that reunification services be continued. The report indicated that the child had issues with taking items that did not belong to her, refusing to take her prescribed hypertension medication, not wanting to participate in therapeutic services with her assigned therapist, and refusing to attend school regularly. When she was in school, she accessed inappropriate websites while in class and had to have her Chromebook taken away from her. The child was also having 'sexual communication' with an unidentified male through social media. The social worker reported that the child was previously placed in a foster home on October 7, 2019. However, due to her negative behaviors, she was removed from the home on October 1, 2020, and placed in a group home since she needed a higher level of care. [¶] . . . [¶]

"The court held a 12-month status review hearing on October 16, 2020. It continued the child as a dependent, continued reunification services, ordered unsupervised visits once a week, and gave CFS the authority for the 29-day visit and to place the child with the parents 'by standing order.' [¶]

"The social worker filed an 18-month status review report on March 26, 2021, recommending that the court continue services for 90 days. [¶] . . . [¶] The social worker opined that it would be detrimental to return the child to the parents and that the case should be continued for 90 days since the parents had not benefited from their

7

domestic violence prevention classes or therapy, to the extent they should have.  They both continued to deny the domestic violence incident on April 19, 2020, in contrast to the police report from that day.  The social worker opined that they both needed to retake a domestic violence prevention class and complete individual therapy.  Furthermore, the parents had not had overnight visits with the child, and she needed to assess the family dynamics when overnight visits occurred. . . .  The social worker recommended a visitation plan with a series of overnight visits, so she could assess the parents' progress.

"On June 18, 2021, the social worker sent an additional information memorandum to the court, recommending that the court terminate father's and mother's reunification services.  Mother missed multiple drug tests and had two positive tests.  Furthermore, on May 24, 2021, a referral was called in to the child abuse hotline alleging that mother may have been under the influence of a controlled substance during a recent visit with the child, but the investigation was still open.  [¶]  The social worker reported that on June 10, 2021, she emailed the police department requesting any reports regarding the parents.  She had not received any police reports, so it was unknown if domestic violence was occurring between the parents.  However, since the parents were residing together and their behaviors affected each other, the social worker believed the child would be at risk of possible abuse and neglect if returned to their home.  Thus, she recommended the court find the parents had failed to participate regularly and make substantive progress in, or complete, the court-ordered case plan, and find that custody by the parents continued to be detrimental to the child and return to their custody would create a substantial risk of detriment to her safety, protection, and well-being.  The social worker further

8

recommended that the court order the parents' reunification services to be terminated, that the child be placed in a concurrent planning home, and the permanent plan of legal guardianship be implemented.

"The court held a[n] [18-month review] hearing on June 25, 2021. [¶] . . . [¶] . . . The court stated that it was finding by clear and convincing evidence that the parents had failed to participate regularly and make substantive progress in or complete their court-ordered case plans. It further stated that the child was continued as a dependent and was in her group home, and it gave CFS authority to place her in a concurrent planning home. The court terminated the services of both parents and ordered the 'permanent plan of placement in foster care with a permanent plan of legal guardianship.' It then continued the matter for a permanency planning review." (*In re S.S.*, *supra*, E077309.)

*Procedural Background Following Case No. E077309*

On December 8, 2021, the social worker filed a section 366.3 Post Permanent Plan status review report (dated December 16, 2021). She reported that on October 7, 2021, she had her monthly contact with the child, and the child said she saw her parents every Sunday. The child reported that her parents were married but had two separate houses, and sometimes they stayed together and sometimes they "sle[pt] apart." The social worker further reported that the parents' visits were increased to three hours once a week, but they were still supervised. The social worker continued to recommend the permanent plan of placement in foster care with a permanent plan of legal guardianship; the child completed her program at the group home and was ready to move forward with a lower

9

level of care in a foster home, with the hope that the caretaker would be willing to be the child's legal guardian.

*Section 388 Petition*

On December 14, 2021, father filed a section 388 petition requesting the court to reinstate his reunification services. As to changed circumstances, he alleged that he "completed the case plan services on his own." As to best interests of the child, father alleged, "It would allow the minor the opportunity to reunify with his [*sic*] father." In support of his petition, father attached a treatment summary from Victorville Counseling indicating that he completed an assessment on August 18, 2021, and 15 counseling sessions after that. Father also attached three certificates of completion from different programs. (We note the quality of the copies attached to father's petition are very poor and difficult to read.) Father states on appeal that he attached certificates from Penn Foster for "Managing High Stress" and from an Active Parenting class. CFS states one certificate is from Penn Foster Corporate Learning for participating in the program "Managing Through Stress," one certificate dated December 19, 2019, is from a parenting program, and the third certificate, dated September 29, 2021, is from a domestic violence program with a focus on victim impact.

On December 14, 2021, the court denied father's petition without a hearing, noting that it did not state new evidence or a change of circumstances, and the proposed change was not in the child's best interests. The court stated, "At best, father has demonstrated changing circumstances."

On December 16, 2021, the court held a post permanent plan review hearing and adopted the social worker's recommended findings and orders, including that the court continue the child as a dependent and order the permanent plan of placement in foster care, with the goal of legal guardianship. That same day, father filed a notice of appeal to challenge the court's findings and orders made at the review hearing.

On February 11, 2022, father filed an amended notice of appeal to include the order denying his section 388 petition on December 14, 2021, as well as the findings and orders made on December 16, 2021.

DISCUSSION

The Court Properly Denied Father's Section 388 Petition

Father argues that the court erred in summarily denying his section 388 petition. He claims he should have been granted an evidentiary hearing since he made the requisite prima facie showing that his circumstances had changed, and that offering him reunification services would be in the child's best interest. We conclude the court properly denied father's petition.

A. *The Court Did Not Abuse its Discretion*

"A juvenile court order may be changed, modified or set aside under section 388 if the petitioner establishes by a preponderance of the evidence that (1) new evidence or changed circumstances exist and (2) the proposed change would promote the best interests of the child." (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806 (*Zachary G.*).) "Thus, the parent must sufficiently allege *both* a change in circumstances or new evidence *and* the promotion of the child's best interests." (*In re G.B.* (2014) 227

11

Cal.App.4th 1147, 1157 (*G.B.*).) "A parent need only make a prima facie showing of these elements to trigger the right to a hearing on a section 388 petition and the petition should be liberally construed in favor of granting a hearing to consider the parent's request. [Citation.] [¶] However, if the liberally construed allegations of the petition do not make a prima facie showing of changed circumstances and that the proposed change would promote the best interests of the child, the court need not order a hearing on the petition." (*Zachary G.*, at p. 806.) "The prima facie requirement is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition." (*Ibid.*) "While the petition must be liberally construed in favor of its sufficiency [citation], the allegations must nonetheless describe specifically how the petition will advance the child's best interests." (*G.B.*, at p. 1157.) More than general conclusory allegations are required to make this showing, even when the petition is liberally construed. (*In re Edward H.* (1996) 43 Cal.App.4th 584, 593 (*Edward H.*).) "We review the juvenile court's summary denial of a section 388 petition for abuse of discretion." (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250.)[3]

---

[3] Father claims the standard of review is de novo, relying on *In re Jeremy W.* (1992) 3 Cal.App.4th 1407 (*Jeremy W.*). However, in that case, the mother submitted evidence with her section 388 petition which established "a strong prima facie showing," and the court summarily denied her petition by checking off boxes on a printed form without making any factual findings or explaining its conclusions. (*Id.* at pp. 1413, 1416.) In contrast, here, the trial court reviewed the supporting evidence and the general averments in father's petition and concluded that he had demonstrated only "changing circumstances" and provided no evidence of best interests of the child. Thus, there was no due process violation. (See *In re Jackson W.*(2010) 184 Cal.App.4th 247, 260 [where a petition fails to make a prima facie showing, summary denial of the petition does not violate petitioner's due process rights].)

Father's section 388 petition sought the provision of more reunification services. The juvenile court did not abuse its discretion in summarily denying the petition, as father was unable to demonstrate that a changed order was in the best interest of the child. As to changed circumstances, the petition merely alleged that father "completed the case plan services on his own." However, we note that at the 18-month hearing on June 25, 2021, father stated that he completed his case plan. Moreover, at the time of the 18-month review, the social worker opined that father needed to retake a domestic violence class and complete individual therapy since he had not benefited from his class or therapy as much as he should have. She was concerned about his failure to acknowledge that domestic violence occurred in his relationship with mother, even after completing domestic violence prevention education classes. Although father apparently completed a subsequent domestic violence program, as evidenced by the completion certificate attached to his section 388 petition, there was no evidence or indication he had benefitted from it. Similarly, although he attached proof that he was participating in counseling, there was no indication of how he had benefitted from it. This is particularly concerning since father had previously completed several domestic violence programs and had participated in therapy, with little to no benefit. Thus, the court properly found that father had only demonstrated "changing circumstances," rather than changed circumstances.

Furthermore, for best interest of the child, father's petition merely asserted that the proposed order "would allow the minor the opportunity to reunify with his [*sic*] father." This general conclusory allegation was simply inadequate. (*Edward H.*, *supra*, 43

13

Cal.App.4th at p. 593.) The petition did not allege *how* the proposed change would promote the best interest of the child. (*G.B.*, *supra*, 227 Cal.App.4th at p. 1157.) Accordingly, there was no need for the court to order a hearing on the petition. (*Zachary G.*, *supra*, 77 Cal.App.4th at p. 806.)

Even on appeal, father fails to show it was in the child's best interest to provide him with services. He relies on three cases that are factually distinguishable and not relevant to his petition. First, he cites *Jeremy W.*, *supra*, 3 Cal.App.4th 1407, in which the mother contended the trial court abused its discretion by summarily denying her section 388 petition to modify its order terminating reunification services and setting a section 366.26 hearing. (*Jeremy W.*, at p. 1413.) The only stated basis for the court terminating her services and setting a section 366.26 hearing was her "lack of stable living accommodations." (*Jeremy W.*, at p. 1415.) The appellate court noted that the three declarations accompanying the mother's section 388 petition directly addressed this issue. Specifically, the mother declared she had maintained her own apartment for some time, and it was adequate for her and her child's needs. (*Jeremy W.*, at pp. 1415-1416.) The court concluded the declarations established "a strong prima facie showing of a favorable change in the single negative factor on which the referee purported to base his section 366.21 order, if not its complete elimination." (*Id.* at p. 1416.) In contrast, here, father did not establish a prima facie case of either changed circumstances or best interests. (See *ante*.)

Father also cites *In re Daijah T.* (2000) 83 Cal.App.4th 666 (*Daijah*). In that case, the trial court summarily denied the mother's section 388 petition, finding that it stated a

change of circumstances as to her personal circumstances and that of the siblings within her care, but it did not state a change of circumstance as to the subject children. The trial court also found the mother had not demonstrated it would be in her children's best interests for the court to grant a hearing on the petition. (*Daijah*, at p. 669.) The appellate court reversed the judgment, concluding in part that the trial court erred in finding the petition defective because it failed to allege a change of circumstances *with respect to the children*. The appellate court stated the section 388 requirement was to allege a change of circumstances with respect to *the parent*. (*Id*. at p. 674.) It also concluded a modification would promote the best interests of the children by reunifying them with their siblings, who were in the mother's custody. (*Id*. at pp. 674-675.) In contrast, here, the court properly focused on *father's* circumstances and found they were changing but had not changed. Moreover, father merely alleged the general conclusion that granting him services was in the child's best interest since "[i]t would allow the minor the opportunity to reunify with his [*sic*] father," and such allegation was insufficient. On appeal, father now avers that the child's reunification with him "would have promoted her contact with her adult sister, with whom she was strongly bonded." However, father's section 388 petition did not even mention the child's sister. Furthermore, unlike the children in *Daijah*, there was no evidence that reunifying the child with father would mean she would see her sister more since her sister was an adult who did not live with him.

Finally, father relies on *In re Hashem H.* (1996) 45 Cal.App.4th 1791, in which the mother lost custody of her child because of her psychological problems. The

mother's section 388 petition sought to regain custody and alleged as changed circumstances that she regularly participated in psychotherapy, and her progress led her therapist to opine her son should be returned to her custody. The mother further alleged that she consistently visited him, held a job, and was ready and able to provide for the child. (*Hashem H.*, at p. 1797.) The mother attached a letter from her therapist recommending that the child be returned to the mother. (*Id*. at p. 1798.) The *Hashem H.* court concluded the prima facie showing of changed circumstances had been made, and it was error to deny a hearing when there was evidence that the problems which led to removal had been resolved. (*Id*. at pp. 1796-1799.) Here, unlike the mother in *Hashem H.*, father did not make a prima facie showing of changed circumstances and did not present a letter from his therapist recommending that the court provide him with services or that the child be returned to him.

We conclude the court did not abuse its discretion in denying father a hearing on his section 388 petition. Even if the petition did allege an actual change of circumstances, it did not allege any facts to support the conclusion that the child's best interests would be served by the order requested by father.

## DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


FIELDS

J.


We concur:


McKINSTER

Acting P. J.


SLOUGH

J.


17