Filed 3/5/25  In re S.M. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re S.M. et al., Persons Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> BEATRICE M., <br><br> Defendant and Appellant. | F088828 <br><br> (Super. Ct. Nos. 19CEJ300185-2, 19CEJ300185-3) <br><br><br> **OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Fresno County.  Kimberly J. Nystrom-Geist, Judge.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel C. Cederborg, County Counsel, and Lisa R. Flores, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Detjen, Acting P. J., Peña, J. and Meehan, J.

Appellant Beatrice M. (mother) is the mother of now three-year-old Sebastian M. and one-year-old B.M. (collectively, the children), who are the subjects of this dependency case. At a disposition hearing in April 2024, the juvenile court denied family reunification services to mother. In October 2024, mother filed a petition under Welfare and Institutions Code section 388[1] asking the juvenile court to order the children placed in her care under a plan of family maintenance or family reunification services be provided to her. The juvenile court summarily denied mother's petition without a hearing. On appeal, mother contends the juvenile court erred in denying the petition without conducting an evidentiary hearing. We find no abuse of discretion, and thus we affirm.

<b>FACTUAL AND PROCEDURAL BACKGROUND</b>

***Initial Removal***

On December 5, 2023, the Fresno County Department of Social Services (department) received a referral alleging general neglect by mother. S.M., at two years of age, was transported to the hospital due to difficulty breathing and vomiting. A drug screen was conducted on S.M., which came back positive for methamphetamine. Mother did not have an explanation for how S.M. came into contact with methamphetamine. She denied any current methamphetamine use, but she admitted to drinking alcohol and smoking marijuana at the time of S.M.'s medical incident. Mother reported relapsing on methamphetamine earlier in the year. B.M., at seven months of age, was living with mother's sister because mother did not have a permanent place to stay. Both children were taken into protective custody by law enforcement.

The department filed an original petition alleging the children were described by section 300, subdivisions (b)(1) and (j). The petition alleged the children were at substantial risk of suffering serious physical harm as a result of mother's substance abuse

---

[1] All further statutory references are to the Welfare and Institutions Code.

and unstable housing. The petition further alleged the children's half sibling, W.J., had been neglected by mother in 2019, and the children were at similar risk of being neglected due to mother's failure to address her substance abuse problem. The identity of the children's father was unknown.

Mother was present for the detention hearing held on December 8, 2023. The juvenile court detained the children from mother's custody, ordered mother's visitation to be supervised at a minimum of twice per week, and set a combined jurisdiction and disposition hearing for January 8, 2024.

### Jurisdiction and Disposition

The department's jurisdiction and disposition report recommended that the allegations in the original petition be found true, the children be removed from mother's custody, and family reunification services be denied to mother pursuant to section 361.5, subdivision (b)(10). The children were placed in a resource family home. Mother's criminal history included misdemeanor convictions for possession of a controlled substance, vandalism, false identification to law enforcement, driving under the influence of alcohol, and willful cruelty to a child.

The report also detailed mother's child welfare referral history as an adult, which included 10 referrals dating back to March 2008. The referrals involved domestic violence, unsanitary home conditions, and substance abuse. Dependency proceedings were initiated in 2019 after mother caused an accident while driving under the influence with W.J. in the car. Mother was provided family reunification services, which included substance abuse, mental health, parenting, domestic violence, and random drug testing. In May 2020, mother's family reunification services were terminated. W.J. remained in long-term foster care until he reached the age of majority.

Mother insisted S.M. became hospitalized because he got ahold of " 'somebody's stuff.' " However, she eventually admitted that her own positive drug test result for amphetamines on December 8, 2023, was caused by her methamphetamine use. Mother

3.

began using marijuana at 13 years of age, alcohol at 14 years of age, and methamphetamine at 18 years of age. She continued to deny that she had a substance abuse problem. An inpatient drug treatment program and parenting class were identified by mother as needs. Visitation notes indicated mother was affectionate and played with the children during her supervised visits.

The jurisdiction and disposition hearing was continued after mother requested a contested hearing, and she was ordered to be personally present for the contested hearing. In an addendum report, dated February 20, 2024, the department provided mother's random drug test results. The tests included positive results for amphetamines, marijuana and alcohol, and all other results were considered "no shows." Mother also missed six of her supervised visits in January and February 2024.

Mother participated in three group sessions for her substance abuse treatment in February 2024. Mother's substance abuse counselor believed she would benefit from inpatient services. The counselor also noted that it always sounded like "party central" in the background when he called mother. During a staffing on February 8, 2024, mother reported using alcohol every other day because she had " 'a lot going on ….' " The department continued to recommend that mother be denied family reunification services based upon her failure to make reasonable efforts to address the problems that led to the removal of W.J. in 2019.

Mother failed to appear at the contested jurisdiction and disposition hearing held on April 3, 2024. The juvenile court found the allegations of the original petition true, denied family reunification services to mother, and set a section 366.26 hearing for July 31, 2024. Mother's supervised visitation was reduced to a minimum of twice per month.

### *Selection and Implementation Hearing*

The section 366.26 report, dated July 8, 2024, recommended that the juvenile court terminate parental rights and order a permanent plan of adoption for the children.

4.

The children were placed in a resource family home, and their care providers wanted to provide a safe and stable home environment through adoption. There were no medical or developmental concerns noted for either of the children. Both children were considered adoptable due to their young age and adoptive placement.

Mother missed multiple scheduled visits after the frequency was reduced. She participated in three supervised visits in April and May 2024, and there were no issues during the visits. On June 27, 2024, mother checked in prior to her visit with the children, but she left before the scheduled visitation time. The department's assessment concluded the children did not appear to have a significant parent-child relationship due to mother's failure to maintain consistent contact.

The initial section 366.26 hearing was continued to allow the department to make additional ICWA inquiries. On July 18, 2024, mother informed the social worker that she had entered an inpatient drug treatment program on July 9, 2024. She admitted that she did not attend a supervised visit in June 2024 because she was using drugs. On August 14, 2024, mother attended a supervised visit with the children, and she was observed to be attentive, interactive, and nurturing to the children. At the end of the visit, the children left without showing any signs of emotional distress. The social worker believed the children viewed mother as a friendly visitor. Both children referred to their care providers as "mom and dad."

At the continued section 366.26 hearing held on August 28, 2024, the juvenile court set the matter for a contested hearing at mother's request. Mother filed a section 388 petition on October 4, 2024, which requested an order for either placement of the children under a plan of family maintenance or family reunification services with increased visitation. The petition alleged mother completed an inpatient drug treatment program, and she was participating in an outpatient drug treatment program. Mother represented that she had addressed the substance abuse problem that led to the children's removal such that reunification would be in the children's best interests.

Attached to the petition were two letters and three certificates from mother's drug treatment facility. The letter dated August 27, 2024, provided verification of mother's entry into the facility's residential drug treatment program on July 1, 2024. The residential counselor noted mother's estimated completion date was October 8, 2024. On October 4, 2024, another counselor from the facility provided a letter, which detailed mother's enrollment in intensive outpatient treatment on September 13, 2024. Mother was expected to participate in group sessions, individual counseling, and drug testing. Her status would be reassessed on December 11, 2024, in order to determine whether she would continue in the program. The certificates acknowledged mother's entry into phase two of the residential program and attendance of 30 days in recovery support.

On October 7, 2024, the juvenile court denied mother's section 388 petition without a hearing. The order indicated the request was denied because it did not state new evidence or a change of circumstances and the proposed change did not promote the best interests of the children. The court also noted that, "[t]he certificate indicates an anticipated completion date; mother has not yet completed the in-patient program and has only just begun an out-patient program."

The juvenile court held the contested section 366.26 hearing on October 14, 2024. Mother was present for the hearing, and she read an unsworn statement to the court. Mother's counsel requested the juvenile court not terminate parental rights. After hearing argument from counsel, the court terminated parental rights of mother and selected a plan of adoption for the children.

## DISCUSSION

Mother contends the juvenile court erred when it failed to grant an evidentiary hearing on her section 388 petition. She argues that her petition and supporting documentation alleged a sufficient change of circumstances to warrant an evidentiary hearing.

6.

## A. Legal Principles

A parent petitioning the court to modify a prior dependency order pursuant to section 388 must show the existence of changed circumstances or new evidence justifying the proposed change and that the proposed change is in the best interests of the child. (§ 388; *In re Stephanie M.* (1994) 7 Cal.4th 295, 317.) A parent need only make a prima facie showing of these elements to trigger the right to an evidentiary hearing, and courts must liberally construe a section 388 petition in favor of its sufficiency. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309–310.) "However, if the liberally construed allegations of the petition do not make a prima facie showing of changed circumstances and that the proposed change would promote the best interests of the child, the court need not order a hearing on the petition. [Citations.] The prima facie requirement is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition." (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806.)

In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case. (*In re Jackson W.* (2010) 184 Cal.App.4th 247, 258.) Further, at the permanency planning stage of the proceedings, a parent's interest in the care, custody, and companionship of the child is no longer paramount. (*In re Stephanie M.*, *supra*, 7 Cal.4th at p. 317.) The focus has shifted from family reunification to stability and permanency for the child. (*In re Marilyn H.*, *supra*, 5 Cal.4th at p. 309.) There is a rebuttable presumption that continued out-of-home placement is in the best interest of the child. (*Marilyn H.*, at p. 310.)

## B. Standard of Review

We review the juvenile court's summary denial of mother's section 388 petition for abuse of discretion. (*In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1079.) The denial must be upheld unless we can determine from the record that the juvenile court's decision "exceeded the bounds of reason by making an arbitrary, capricious or patently absurd

7.

determination." (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 642.) When two or more inferences can reasonably be deduced from the facts, we have no authority to substitute our decision for that of the juvenile court. (*In re Brittany K.* (2005) 127 Cal.App.4th 1497, 1505.) Where there is conflicting evidence, we reverse only if the evidence compels a finding for the appellant as a matter of law. (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1527–1529.)

### C.    Analysis

In the present case, the juvenile court determined that mother did not prove the existence of a change in circumstances in order to grant her request for a hearing on the section 388 petition. Mother provided evidence that she was participating in substance abuse treatment in the three months prior to the section 366.26 hearing. These facts were understood and acknowledged by the court's order denying the petition. However, it is irrelevant that there may be evidence which would support a conclusion contrary to that of the juvenile court. (*In re K.B.* (2009) 173 Cal.App.4th 1275, 1292.) The court summarily denied mother's section 388 petition because it did not find that mother's circumstances were changed or that mother's request was in the children's best interests, given the children's need for permanency. Thus, the court properly considered mother's continuing progress in light of her longstanding substance abuse problem.

Mother's argument that her bond with the children and participation in substance abuse treatment mandated a hearing on the petition ignores the legally required shift in focus once reunification services were denied. Mother's section 388 petition contemplated further delay in permanency for children who had remained in out-of-home care with minimal contact from mother for 10 months. Although mother had begun making progress by participating in substance abuse treatment, the circumstances before the juvenile court showed that mother was still in the early stages of addressing her substance abuse problem. Mother's issues with abusing substances dated back to at least June 2016, based upon her conviction for drug possession.

We acknowledge that mother's continued progress in treating her substance abuse problem indicates that her circumstances are changing, and mother's continued efforts are to be commended. However, mother must demonstrate "*changed*, not changing, circumstances." (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 615.) Thus, it was reasonable for the juvenile court to conclude mother's recent efforts in the few months prior to the filing of the section 388 petition evidenced "changing" rather than "changed" circumstances, particularly in light of her failure to make any efforts until seven months had elapsed following the children's removal. (See *In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423–424 [200 days of sobriety not enough to demonstrate changed circumstances given the parent's history]; *Kimberly F.* (1997) 56 Cal.App.4th 519, 531, fn. 9 ["It is the nature of addiction that one must be 'clean' for a much longer period than 120 days to show real reform."].)

Because mother did not make a sufficient showing that her circumstances had changed in the six months following the disposition hearing, the juvenile court properly denied her section 388 petition without a hearing. The children were placed with care providers who were committed to a plan of adoption. Considering the young children's need for permanency and stability, and the inability of mother to consistently demonstrate her commitment to sobriety throughout the proceedings, the court's decision to forego reunification efforts was not arbitrary or beyond the bounds of reason. Accordingly, we find the juvenile court did not abuse its discretion in denying the section 388 petition without a hearing. Based on the foregoing, we also reject mother's additional argument that termination of her parental rights was premature because her petition should have been granted.

**<u>DISPOSITION</u>**

The juvenile court's order is affirmed.

9.