Filed 6/22/26  In re A.H. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re A.H., a Person Coming Under the Juvenile Court Law. | |
| SAN FRANCISCO HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br>v.<br>A.H.,<br><br>        Defendant and Appellant. | A174851<br><br>(San Francisco City & County Super. Ct. No. JD22-3285) |

A.H. (appellant), a biological father, appeals from the juvenile court's denial of his Welfare and Institutions Code section 388[1] petition without an evidentiary hearing.  We affirm.

BACKGROUND[2]

In November 2022, the San Francisco Human Services Agency (Agency) filed a section 300 petition seeking to detain then one-year-old A.H. (Minor)

_____

    [1] All undesignated statutory references are to the Welfare and Institutions Code.

    [2] This summary of the factual and procedural background is largely taken from this court's decisions in case number A173715, filed September 12, 2025, and case number A173237, filed December 30, 2025.

1

after her mother I.H. (Mother) had a public mental breakdown and was placed on an involuntary psychiatric hold. The petition further alleged that appellant, then the alleged father, had failed to protect Minor and that his whereabouts and ability to care for Minor were unknown. The detention report stated that the Agency had been unable to make contact with the alleged father and that the Agency only had his name and a date of birth. The report also noted that Mother had previously signed a statement stating that Minor's father was unknown. The Agency also filed a search declaration detailing its efforts to locate the alleged father.

Subsequently, Mother failed to comply with an order to bring Minor to the Agency to be assessed, and Mother and Minor's whereabouts remained unknown through October 2023, despite the Agency's search efforts. In November 2023, an amended section 300 petition was filed alleging that Minor was found and removed from Mother's custody on November 8, after a shooting at the home where Mother and Minor were staying.

Also in November 2023, the Agency filed a declaration of due diligence detailing its unsuccessful efforts to find appellant. In an order filed in December, the juvenile court found that notice had been given as required by law, reasonable efforts had been made to locate the alleged father, and his whereabouts were unknown.

In January 2024, Mother submitted to the allegations in a second amended petition and the juvenile court sustained the petition. In February, the Agency again asked Mother about the alleged father; she denied knowledge of his whereabouts and stated that he was not on the birth certificate, they were not a couple, he was not present for the birth, and she did not know how to reach him.

In August 2024, at the time of the six-month review hearing, the

2

Agency recommended that Mother's reunification services be terminated. The Agency reported that Minor was thriving in a foster home. The contested hearing was continued to February 2025; the Agency's addendum report for the February hearing continued to recommend termination of reunification services. The February report also included an address for appellant at a San Mateo County jail facility. Mother's counsel had located him, as reflected in a January 24 email. Counsel was appointed for appellant on February 5.

According to a March 5, 2025 declaration, on February 27, the Agency contacted the San Mateo County Sheriff and learned that appellant had been sentenced to two years at a state hospital on January 7. On March 5, the Agency located appellant at Atascadero State Hospital.

In March 2025, appellant filed a section 388 petition seeking to set aside the prior findings based upon inadequate notice to him. The supporting papers stated that he was in San Mateo County jail at the time of the November 2022 detention hearing and was transferred to Atascadero State Hospital on February 4, 2025. The Agency opposed the section 388 petition, arguing that the Agency had exercised reasonable diligence. Minor's counsel also opposed the petition.

In April 2025, appellant filed a JV-505 Statement Regarding Parentage. He checked a box stating that he did not know if he was the parent of Minor and requested paternity testing. Among other things, appellant asserted that he spent time with Minor "when she was 1 to 5 months old" and that then he was incarcerated and "unable to contact [M]other until my attorney notified me of this pending dependency matter."

In May 2025, the juvenile court denied the section 388 petition, finding

3

that the Agency exercised reasonable diligence to locate appellant. In case number A173237, this court affirmed the juvenile court's May 2025 order denying his section 388 petition. (*In re A.H.* (Dec. 30, 2025, A173237) [nonpub. opn.].)

On June 26, 2025, the juvenile court conducted a combined six-, 12-, and 18-month review hearing. Before the hearing, the Agency filed an addendum report recommending termination of reunification services and the scheduling of a section 366.26 hearing. Among other things, the report noted that appellant was an alleged father not receiving reunification services and unable to be a placement for Minor.

At the June 2025 contested hearing, the juvenile court considered appellant's JV-505 statement and took testimony on the question of whether he should be elevated to a biological or presumed father. The court ultimately denied without prejudice appellant's request for biological father status and granted his request for paternity testing. The court found that appellant did not meet the statutory criteria for presumed father status. The court observed that appellant's incarceration was the reason he was not able to elevate himself to presumed parent status. The juvenile court stated that appellant was not entitled to reunification services and that it was "not finding that reunification services would be in [Minor's] best interest." The court terminated Mother's reunification services and scheduled a section 366.26 hearing for October 15, 2025.

Appellant filed a petition for writ relief (case No. A173715) that this court denied on September 12, 2025. (*A.H. v. Superior Court* (Sept. 12, 2025, A173715) [nonpub. opn.].) This court concluded the juvenile court did not err in denying appellant's requests for either biological or presumed father status. As to appellant's request for a paternity test, this court observed that,

4

even if a paternity test had shown alleged father to be the biological father, it would not have affected scheduling the section 366.26 hearing, because the juvenile court did not find reunification services were in Minor's best interest. Subsequently, this court dismissed a separate appeal, case number A173714, based on appellant's counsel's representation that the decision in case number A173715 "resolved all issues that could be raised in [case number] A173714." Based on a similar representation from counsel, this court also dismissed appellant's petition for writ of habeas corpus (case No. A173897).

On September 30, 2025, the Agency filed a section 366.26 report recommending termination of parental rights and that Minor be placed for adoption with her current caregivers. The report stated that the Agency received paternity results on August 28 showing that appellant was Minor's biological father. The report also stated that appellant "is not and has not been in a position to care for" Minor, and there had been no visitation. Minor was thriving with her current caretakers, with whom she had lived for nearly two years. Minor had a strong relationship with her caretaker and the caretaker's son, Minor was participating in various activities, and the caretaker was committed to adopting Minor. The section 366.26 report also described the Agency's efforts to comply with the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.), following the maternal grandmother's disclosure that she believed her great-grandmother was Cherokee.

On October 6, 2025, appellant filed another section 388 petition seeking to designate him as Minor's biological father; grant him reunification services; order the Agency to complete an assessment for relative placement; and vacate or continue the section 366.26 hearing. As changed circumstances, appellant listed the paternity test results and the circumstance that a paternal great-grandmother had reported Native

5

American ancestry. Appellant attached the test results and an ICWA-020 form. He asserted the requests were in Minor's best interest because, "Developing the minor's connection and ties to her cultural, historical, lineal and familial roots by expanding the nature of . . . her relationships with her biological father and his relatives through visit and placements serves to develop her self-identity, her cultural identity, and knowledge of her heritage."

The juvenile court directed that the question of whether the court should grant an evidentiary hearing be addressed at a hearing on October 15, 2025 (the same date set for the section 366.26 hearing). Appellant appeared remotely and the court began by addressing the section 388 petition. The court elevated appellant's status to biological father. The juvenile court made ICWA inquiries of appellant and another present family member and directed appellant to provide names and contact information for his relatives.

Appellant's counsel asked the court to exercise its discretion to order reunification services or order an evidentiary hearing to "further maintain the bond between the child and Father and especially now that relative placements are being considered in order to fully support the interests of the minor to have contact with her paternal family and relatives." Minor's counsel objected on the basis that appellant did not meet his burden to show it would be in the Minor's best interest, observing that appellant would not be in a position to care for Minor even if he were granted services, given his confinement. Minor's counsel also observed that appellant did not have a relationship with Minor and that Minor was doing well in her placement of two years. The Agency joined in those arguments.

The juvenile court denied appellant's request for an evidentiary hearing. The court found the paternity results were a changed circumstance,

6

but an evidentiary hearing was unwarranted because appellant failed to make a prima facie showing that reunification services were in Minor's best interest. The court observed the petition was not supported by a declaration and that appellant had "essentially no relationship with [Minor]. It is undisputed that he is going to be in the custodial setting for a significant time period." The court continued, "I just cannot see how offering reunification services to an incarcerated parent who has no relationship with the child is in the child's best interest. [¶] And so I find that postponing the [section 366].26 hearing to enable him to receive services is not in the child's best interest. I will find that instead it would be detrimental to delay permanency for that issue."

The juvenile court continued the section 366.26 hearing to December 12 and 15, 2025. The court directed the Agency to comply with ICWA, ordered that the relative placement issue would be heard at the time of the section 366.26 hearing, and gave the Agency discretion to arrange visitation between appellant and Minor.[3]

---

[3] The parties' requests for judicial notice of this court's opinions in case numbers A173715 and A173237 are granted. We deny appellant's January 27, 2026 request for judicial notice of October 13, 2025 San Mateo County Superior Court findings regarding appellant's competency. That matter is not subject to judicial notice because appellant has not shown it was presented to the juvenile court in support of his section 388 petition. (*In re Kenneth D.* (2024) 16 Cal.5th 1087, 1106.) In his reply brief, appellant makes a new argument that the evidence of his competency was relevant because the juvenile court was biased against him due his presumed incompetence. That claim has been forfeited because it was not included in his opening brief. (*Tellez v. Rich Voss Trucking, Inc.* (2015) 240 Cal.App.4th 1052, 1066.) In any event, it is clear the juvenile court did not base its best interest finding on appellant's incompetence; indeed, the court observed that appellant had been able to participate in the proceedings and "there is no concrete or explicit information before the Court regarding competency or lack of competency other than the fact that [appellant] is in a state hospital."

7

DISCUSSION

"Under section 388, a parent may petition to change or set aside a prior order 'upon grounds of change of circumstance or new evidence.' [Citations.] The juvenile court shall order a hearing where 'it appears that the best interests of the child . . . may be promoted . . .' by the new order. (§ 388, subd. (d).) Thus, the parent must sufficiently allege *both* a change in circumstances or new evidence *and* the promotion of the child's best interests. [Citation.] [¶] A prima facie case is made if the allegations demonstrate that these two elements are supported by probable cause. [Citations.] It is not made, however, if the allegations would fail to sustain a favorable decision even if they were found to be true at a hearing. [Citations.] While the petition must be liberally construed in favor of its sufficiency [citations], the allegations must nonetheless describe specifically how the petition will advance the child's best interests." (*In re G.B.* (2014) 227 Cal.App.4th 1147, 1157, fn. omitted.) "In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case." (*In re Jackson W.* (2010) 184 Cal.App.4th 247, 258.) The juvenile court's determination to summarily deny a section 388 petition is reviewed for abuse of discretion. (*In re Ramone R.* (2005) 132 Cal.App.4th 1339, 1348.)

Here, the juvenile court found appellant had not made a prima facie case that his request for reunification services was in Minor's best interest. It is undisputed that appellant and Minor did not have a relationship, that appellant was incarcerated and unavailable to care for Minor, that Minor was thriving in her placement, and that Minor has a strong interest in permanency and stability. Nevertheless, appellant claims Minor has an interest in developing a relationship with him, her biological father. Although that is true, that does not mean the juvenile court abused its

8

discretion in finding that Minor's interest in developing that relationship was clearly outweighed by her interest in permanency and stability with her new family.[4] "The presumption favoring natural parents by itself does not satisfy the best interests prong of section 388. The cases that state a child may be better off with his or her biological parent rather than with strangers do so when the biological parent has shown a sustained commitment to the child and parenting responsibilities." (*In re Justice P.* (2004) 123 Cal.App.4th 181, 192.) Appellant has not shown the court erred.

Appellant relies on *In re Julia U.* (1998) 64 Cal.App.4th 532, which held that the juvenile court erred in denying reunification services to a biological father before terminating parental rights. The case is distinguishable. There, the agency unreasonably delayed in establishing the appellant's paternity, the appellant was available to parent the minor, and the minor had only been removed from the mother's care for two months when the appellant first appeared in court. (*Id.* at pp. 543–544.) The court emphasized that the "appellant was not incarcerated or otherwise unavailable to learn parenting skills." (*Id.* at p. 544.) As explained in this court's opinion in case number A173237, appellant here never had an opportunity to develop a relationship with Minor because he was incarcerated

---

[4] We reject appellant's argument that the juvenile court's delay of the section 366.26 hearing to permit consideration of relative placement and ICWA issues undermines the court's reliance on Minor's interest in stability and permanency. The court could reasonably conclude that providing appellant reunification services pending resolution of those issues was not in Minor's best interest, given the absence of a relationship between appellant and Minor and appellant's unavailability to care for Minor.

9

and the Agency was unable to find him at an earlier point in the proceeding despite its reasonably diligent search.[5]

## DISPOSITION

The juvenile court's orders are affirmed.


SIMONS, J.


We concur.

JACKSON, P. J.
BURNS, J.


(A174851)

---

[5] To the extent appellant relies on *In re Julia U.*, *supra,* 64 Cal.App.4th at page 544, for the proposition that termination of parental rights would constitute a due process violation, any such claim must be made in an appeal from a termination of parental rights. Appellant also references issues concerning relative placement and ICWA, but appellant has failed to articulate any claim of error as to those issues.